**Sue Ann STINSON, Appellant,**

**v.**

**The INSURANCE COMPANY OF THE STATE OF PENNSYLVANIA, Gallagher Bassett Services, Inc., and Belinda Ybarra, Appellees.**

**No. 14–07–00698–CV.**

Court of Appeals of Texas, Houston (14th Dist.).

April 30, 2009.

---

Byron C. Keeling, Keeling & Downes, P.C., Houston, for appellant.

Matthew Sean Parish, Houston, for appellees.

Panel consists of Justices YATES, SEYMORE, and BOYCE.

## SUBSTITUTE OPINION

WILLIAM J. BOYCE, Justice.

Appellees' motion for rehearing is overruled. The opinion issued on March 24, 2009 is withdrawn. This opinion is issued as the substitute.

Appellant Sue Ann Stinson challenges the dismissal of her suit asserting extra-contractual claims against appellees the Insurance Company of the State of Pennsylvania, Gallagher Bassett Services, Inc., and Belinda Ybarra. Stinson contends the trial court erred in dismissing her suit for want of jurisdiction based on an asserted failure to exhaust available administrative remedies. We reverse and remand.

## Background

Stinson was working as a flight attendant on December 16, 2003 during a Continental Airlines flight from Los Angeles to Honolulu. She fell backwards, hit her tailbone and head, and briefly lost consciousness when the aircraft came to an abrupt stop as it was taxiing for departure from Los Angeles. The flight continued as scheduled, and Stinson was examined upon arrival in Honolulu by a doctor who diagnosed her injury as a concussion and cervical strain.

Stinson returned home to Spring, Texas, and was examined by Dr. Robert Turner. He ordered Stinson not to work until January 1, 2004. Dr. Turner believed that Stinson's injuries would resolve themselves without treatment, and that she would reach maximum medical improvement by February 1, 2004.

Continental reported Stinson's injury to Gallagher Bassett, a third-party administrator for Continental's workers' compensation carrier, the Insurance Company of the State of Pennsylvania. Gallagher Bassett initially assigned adjuster Denise Anderson to investigate Stinson's claim; it later transferred the claim to adjuster Belinda Ybarra. The insurance carrier paid Stinson temporary income benefits for her two-week absence from work.

Stinson began experiencing dizziness, numbness, and pain shortly after she returned to work in January 2004. Stinson met with Dr. Turner again and he referred her to a chiropractor, Dr. Glenn Helton, who began treating her in January 2004. Over the next several weeks, Dr. Helton advised Stinson to ask Dr. Turner to perform certain diagnostic tests and treatment. Dr. Turner refused these requests.

In late April 2004, Stinson asked to change her treating physician of record from Dr. Turner to Dr. Helton. In May 2004, Dr. Helton ordered Stinson not to work. Once Stinson began this absence from work, the insurance carrier began paying temporary income benefits to her. Stinson underwent X-rays and an MRI exam in May 2004, which revealed cervical spondylosis, cervical disc protrusions, stenosis and annular tear, and lumbar disc protrusions.

In a letter dated June 15, 2004, Stinson was informed that adjuster Ybarra had asked Dr. Zvi Kalisky to perform an independent medical examination of Stinson scheduled for July 1, 2004.

On June 30, 2004, neurologist Dr. David Tomaszek reviewed Stinson's MRI results and examined her. Dr. Tomaszek wrote a report on the same date in which he (1) observed that Stinson had not achieved significant improvement in the six months since her injury; and (2) recommended that Stinson undergo treatment including physical therapy. His report states: "I have spoken to Dr. Helton by phone, and he has agreed to carry out a cervical flexion/distraction regimen over the next couple of weeks. I have also put this woman on a Medrol 6 day Dosepak and will see her back in mid July." The report continues: "Should her symptoms not improve, I would recommend transforminal epidural blocks at C4–5 and C5–6 on the right side...." The report further states: "Un-

der the most drastic circumstances of continued symptomatology ... discography at C4–5, C5–6, and C6–7 could be done ... and if necessary ... an anterior cervical discectomy and fusion could be considered."

Dr. Helton testified at his deposition that cervical flexion and distraction is a form of physical therapy. The Workers' Compensation Act requires preauthorization for physical therapy treatments. *See* Tex. Lab.Code Ann. § 413.014(c)(4) (Vernon 2006). Dr. Helton testified that he and Dr. Tomaszek requested preauthorization for the recommended physical therapy. Dr. Helton also testified that he faxed a copy of Dr. Tomaszek's June 30, 2004 report to Gallagher Bassett.

After conducting an independent medical examination of Stinson on July 1, 2004, Dr. Kalisky wrote a report in which he disagreed with Dr. Tomaszek's recommendation for Stinson to receive physical therapy. Dr. Kalisky opined in his July 1, 2004 report that "[n]o further treatment is recommended other than a home-based exercise program." Dr. Kalisky described Stinson's status as "post contusion/strain to the cervical and lumbar spine superimposed on age-related cervical and lumbar degenerative spondylosis. The disk protrusions noted on MRI of the cervical and lumbar spine probably reflect preexisting degenerative disk disease."

Gallagher Bassett sent a first notice of claim dispute and refusal to pay benefits to Stinson on July 21, 2004. This first notice states: "Carrier disputes the cervical and lumbar degenerative spondylosis as preexisting and/or an ordinary disease of life." The July 21, 2004 notice does not address or reference the medical necessity of physical therapy. The insurance carrier continued to pay Stinson temporary income benefits after July 21, 2004.

Based on the July 21, 2004 notice of claim dispute, Stinson requested a benefit review conference with the Texas Workers' Compensation Commission ("TWCC").[1] The TWCC selected Dr. Becky Personett as a designated neutral physician to determine whether Stinson had reached maximum medical improvement from her injury. On August 24, 2004, Dr. Personett examined Stinson and concluded that she had not reached maximum medical improvement.

The TWCC also arranged for Stinson to see an orthopedic surgeon, Dr. Richard Larrey, for an independent medical exam to determine whether Stinson's December 16, 2003 fall caused her lumbar and cervical problems, and whether Dr. Tomaszek's recommended physical therapy was medically necessary. Dr. Larrey examined Stinson on September 20, 2004 and reported to Ybarra that Stinson's injuries from her fall should have resolved already, and that the requested physical therapy was not medically necessary.

Gallagher Bassett sent a second "Notice of Disputed Issue(s) and Refusal to Pay Benefits" to Stinson on September 23, 2004. This second notice states: "Based on Commission selected RME there is no medical necessity for chiropractic treatment, medications other than over the counter NSAIDS, physical therapy, injection treatment, pain management treatment, surgical treatment or further diagnostic imaging." This second notice does not address or reference compensability. The record contains no written communication by Gallagher Bassett to Stinson before this time denying the physical therapy

recommended by Dr. Tomaszek as being medically unnecessary.

Gallagher Bassett sent a third "Notice of Disputed Issue(s) and Refusal to Pay Benefits" to Stinson on October 19, 2004. This third notice states: "Carrier disputes that the compensable injury extends to and includes cervical disc protrusions and/or herniations, cervical radiculopathy, lumbar disc protrusions and/or herniations and lumbar radiculopathy." This third notice does not address or reference the medical necessity of physical therapy.

Dr. Personett conducted a second examination of Stinson on January 11, 2005 and disputed the conclusions of Drs. Kalisky and Larrey. Dr. Personett again reported that Stinson had not reached maximum medical improvement, and opined that Stinson had "compensable injuries involving the concussion, the cervical spine, and the lumbar spine that have made a definite difference in her life since the moment of the injury."

In February 2005, the insurance carrier approved and began paying medical benefits for physical therapy.[2]

On May 4, 2005, the TWCC conducted a non-binding benefit review conference. The disputed issue at the benefit review conference is listed in the TWCC's report as follows: "Does the 12/16/03 compensable injury extend to and include cervical disc protrusions and/or herniations, cervical radiculopathy, cervical degenerative spondylosis, lumbar disc protrusions and/or herniations, lumbar radiculopathy, and lumbar degenerative spondylosis?"

1. The Texas Workers' Compensation Commission was replaced in 2005 by the Texas Department of Insurance, Division of Workers' Compensation. *See* Tex. Lab.Code Ann. § 402.001 (Vernon 2006).

2. Dr. Helton administered physical therapy to Stinson approximately 49 times without pay between July 21, 2004 (the date of Gallagher Bassett's first notice of dispute and refusal to pay benefits) and February 2, 2005 (the date of Stinson's first physical therapy treatment with Kinetics Plus).

The TWCC adopted Stinson's position and answered this question in the affirmative. Gallagher Bassett rejected the TWCC's recommendation from the benefit review conference.

On June 15, 2005, the TWCC held a benefit contested case hearing to decide the compensability issue addressed at the May 4 benefit review conference. The TWCC decided the contested case hearing on compensability in Stinson's favor in conformity with the earlier benefit review conference. The TWCC signed an order on June 22, 2005 requiring the insurance carrier "to pay benefits in accordance with this decision." Gallagher Bassett did not further challenge this order regarding compensability.

Stinson sued the insurance carrier, Gallagher Bassett, and Ybarra in Harris County district court on November 14, 2005. Stinson's original petition lists four causes of action: (1) violations of the Texas Insurance Code; (2) breach of the common law duty of good faith and fair dealing; (3) legal malice; and (4) violations of the Texas Deceptive Trade Practices Act ("DTPA"). Stinson seeks actual damages including "the consequential damages to her economic welfare from the wrongful denial and delay of benefits; the mental anguish and physical suffering resulting from this wrongful denial of benefits, and the other actual damages permitted by law." Stinson also seeks exemplary damages, prejudgment interest, and DTPA treble damages and attorneys' fees.

After their earlier motion for summary judgment was denied, appellees filed a motion to dismiss Stinson's claims for lack of subject matter jurisdiction on May 7, 2007 based on an asserted failure to exhaust available administrative remedies. Appellees contend that Stinson was required to establish the medical necessity of the allegedly delayed treatments as of the time Dr. Tomaszek first recommended them during the summer of 2004. Appellees further contend that Stinson failed to establish the medical necessity of physical therapy and failed to exhaust her administrative remedies because preauthorization never was requested for the physical therapy treatments recommended in Dr. Tomaszek's June 30, 2004 report.

Stinson responded to appellees' motion to dismiss on May 14, 2007, asserting that she had adequately exhausted her administrative remedies as evidenced by the TWCC's signed order of June 22, 2005 rejecting the compensability challenge and requiring appellees to pay benefits. Stinson contends that appellees failed to investigate her workers' compensation claim properly and wrongfully delayed or denied payment of medical benefits, which delayed her receipt of physical therapy and other treatment from July 2004 until February 2005. Stinson disclaims any intent to predicate her extra-contractual claims on the medical necessity dispute; instead, she attributes the alleged delay in receipt of treatment to Gallagher Bassett's unsuccessful pursuit of the compensability challenge. Stinson further disclaims any effort to recover past wages, actual medical costs, or expenses for treatment.

On June 22, 2007, the district court signed an order granting appellees' motion to dismiss. Stinson now appeals that order and challenges the dismissal of her extra-contractual claims based upon the trial court's determination that it could not exercise jurisdiction because she had failed to exhaust her available administrative remedies.

Stinson asserts on appeal that preauthorization of physical therapy and other treatment was requested, and that appellees assented to the medical necessity of Dr. Tomaszek's recommended course of treatment once they began paying for

physical therapy in February 2005. According to Stinson, this assent to the medical necessity of Dr. Tomaszek's recommended treatment left compensability as the only disputed issue. Stinson further asserts that she had no administrative remedies left to exhaust following the TWCC's signed order of June 22, 2005 determining compensability in her favor and requiring appellees to pay benefits.

## Standard of Review

■ Determining whether a court has . subject matter jurisdiction—including exhaustion of administrative remedies—is treated as a question of law and reviewed *de novo*. See *Subaru of Am., Inc. v. David McDavid Nissan, Inc.,* 84 S.W.3d 212, 222 (Tex.2002); *Mayhew v. Town of Sunnyvale,* 964 S.W.2d 922, 928 (Tex. 1998); *Kelly v. Am. Interstate Ins. Co.,* No. 14–07–00083–CV, 2008 WL 5085138, at *2 (Tex.App.-Houston [14th Dist.] Nov. 25, 2008, pet. filed) (mem. op., not designated for publication) (citing *Tex. Dep't of Parks & Wildlife v. Miranda,* 133 S.W.3d 217, 226 (Tex.2004)).

■ A plea to the jurisdiction challenging exhaustion of administrative remedies under the workers' compensation scheme can rest on the pleadings, or on evidence. *Combined Specialty Ins. Co. v. Deese,* 266 S.W.3d 653, 657 (Tex.App.-Dallas 2008, no pet.) (citing *Miranda,* 133 S.W.3d at 226); *see also Kelly,* 2008 WL 5085138, at *2; *Schwartz v. Ins. Co. of Penn.,* 274 S.W.3d 270, 273–74 (Tex.App.-Houston [1st Dist.] 2008, pet. denied).

■ "When a plea to the jurisdiction challenges the pleadings, we determine if the pleader has alleged facts that affirmatively demonstrate the court's jurisdiction to hear the case." *Deese,* 266 S.W.3d at 657 (citing *Miranda,* 133 S.W.3d at 226). The reviewing court "must look to the allegations in the pleadings, liberally con-strue them in the plaintiff's favor, and look to the pleader's intent." *Kelly,* 2008 WL 5085138, at *2 (citing *Miranda,* 133 S.W.3d at 226). "If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend." *Id.* (citing *Miranda,* 133 S.W.3d at 226–27).

■ When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *Id.* (citing *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex.2000)); *see also Deese,* 266 S.W.3d at 657. The standard of review for a jurisdictional plea based on evidence " 'generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c).' " *Deese,* 266 S.W.3d at 657 (quoting *Miranda,* 133 S.W.3d at 228). Under this standard, we credit evidence favoring the non-movant and draw all reasonable inferences in the non-movant's favor. *See id.* at 659 (citing *Miranda,* 133 S.W.3d at 228).

## Analysis

Workers' compensation benefits may be disputed—among other grounds—based on (1) compensability of the injury; and (2) medical necessity of the treatment recommended for a compensable injury. *See* 28 Tex. Admin. Code § 133.305(a)(1)(B) (2004) (Tex. Workers' Comp. Comm'n, Medical Dispute Resolution—General), 140.1(1) (2004) (Tex. Workers' Comp. Comm'n, Definitions). A workers' compensation insurance carrier must provide written notice of the specific grounds on which it refuses to pay benefits. Tex.

Lab.Code Ann. § 409.021(a)(1), .022(a) (Vernon 2006).

Appellees provided three written notices of dispute regarding Stinson's claim. The first and third notices—dated July 21, 2004 and October 19, 2004, respectively—disputed the compensability of Stinson's injury because they challenged whether all of Stinson's cervical and lumbar conditions were attributable to her fall on December 16, 2003. The second notice—dated September 23, 2004—disputed the medical necessity of Dr. Tomaszek's recommended treatment for Stinson's cervical and lumbar conditions.

■ A party must exhaust all administrative remedies before seeking a judicial remedy when, as here, an administrative agency has exclusive jurisdiction. *Subaru*, 84 S.W.3d at 221. The exhaustion requirement ensures that the administrative agency has the opportunity to resolve disputed fact issues within its exclusive jurisdiction before a court must address those issues. *See Essenburg v. Dallas County*, 988 S.W.2d 188, 189 (Tex.1998) (per curiam). Because this case involves the interplay of two separate disputes—one focusing on compensability and another on medical necessity—it is helpful to describe the different resolution procedures that apply here under separate chapters of the Workers' Compensation Act.

**A. Exhaustion of Administrative Remedies Regarding Compensability**

Chapter 410 of the Workers' Compensation Act addresses disputes regarding compensability and extent of injury. This chapter establishes a four-tier system for the disposition of claims by the TWCC.

*Tex. Mut. Ins. Co. v. Ruttiger*, 265 S.W.3d 651, 657 (Tex.App.-Houston [1st Dist.] 2008, pet. filed).

In the first tier, the parties participate in a non-binding benefit review conference designed to mediate and resolve disputed issues by agreement of the parties. *Id.* (citing Tex. Lab.Code Ann. §§ 410.021–.034 (Vernon 2006 & Supp.2007)). In the second tier, a party may seek a contested case hearing with the TWCC to decide any issues not resolved by agreement or through the benefit review conference. *Id.* (citing Tex. Lab.Code Ann. §§ 410.104, .151–.169 (Vernon 2006 & Supp.2007)). In the third tier, the party who loses at the contested case hearing may seek review by an administrative appeals panel. *Id.* (citing Tex. Lab.Code Ann. §§ 410.201–.208 (Vernon 2006 & Supp.2007)). In the fourth and final tier, a party may seek judicial review of issues regarding final decisions of disputes adjudicated by the TWCC. *Id.* (citing Tex. Lab.Code Ann. §§ 410.251–.308 (Vernon 2006 & Supp. 2007)).[3]

**B. Exhaustion of Administrative Remedies Regarding Medical Necessity**

Certain medical treatments and services, including physical therapy, require a claimant or health care provider to seek preauthorization from the insurance carrier under chapter 413 of the Workers' Compensation Act and accompanying regulations. *See* Tex. Lab.Code Ann. § 413.014(c)(4), (d) (Vernon 2006); 28 Tex. Admin. Code § 134.600(e) (2004) (Tex. Workers' Comp. Comm'n, Preauthorization, Concurrent Review, and Voluntary Certification of Health Care).

---

**3.** Several sections of the Workers' Compensation Act pertaining to disputes were amended effective September 1, 2005. *See* Act of June 1, 2005, 79th Leg., R.S., ch. 265, §§ 3.146, .153–.208, 2005 Tex. Sess. Law Serv. 469, 533–43 (to be codified at Tex. Lab.Code Ann. §§ 409.022(c), 410.021–.308). None of these amendments substantively changed the dispute process described in *Ruttiger. See id.*

██ "The TWCC has jurisdiction over disputes involving preauthorization of medical care and reimbursement of medical expenses." *Kelly,* 2008 WL 5085138, at *4 (citing *Am. Motorists Ins. Co. v. Fodge,* 63 S.W.3d 801, 803 (Tex.2001)). "A claimant must exhaust all administrative remedies with the TWCC before suing an insurer on statutory and tort claims alleging denials, delays, interruptions, and premature terminations of medical treatment." *Kelly,* 2008 WL 5085138, at *4 (citing *Fodge,* 63 S.W.3d at 804, and *Pickett v. Tex. Mut. Ins. Co.,* 239 S.W.3d 826, 832 (Tex.App.-Austin 2007, no pet.)).

Preauthorization requests may be made by telephone, facsimile, or electronic transmission. 28 Tex. Admin. Code § 134.600(e)(1). An insurance carrier must approve or deny a preauthorization request and provide notice of its decision to the claimant or health care provider by telephone, facsimile, or electronic transmission within three working days of receipt of the request. *Id.* § 134.600(f)(1), (3)(A). The insurance carrier must send written notice of its decision to the employee or her representative within one working day of the decision. *Id.* § 134.600(f)(4). A preauthorization denial must include "the description or source of screening criteria used, the principal reasons, and clinical basis for making the denial ..." along with "plain language notifying the employee of the right to timely request reconsideration...." *Id.* § 134.600(f)(6)(A), (B).

If an insurance carrier denies preauthorization, the claimant or health care provider may request reconsideration within 15 working days of receipt of a written denial and must document the reconsideration request. *Id.* § 134.600(g)(1). The insurance carrier must respond to a request for reconsideration within five working days of receipt of the request. *Id.* § 134.600(g)(2)(A).

If reconsideration is denied, a health care provider or employee may appeal the denial by filing with the TWCC a request for medical dispute resolution by an independent review organization. *Id.* § 134.600(g)(3). Medical necessity disputes are categorized as "prospective" or "retrospective." 28 Tex. Admin. Code § 133.305(a)(1)(B)(i), (ii).

The parties agree that the dispute at issue here regarding Dr. Tomaszek's recommended treatments is a prospective medical necessity dispute. Prospective disputes involve review of the medical necessity of health care requiring preauthorization, and are reviewed by an independent review organization pursuant to 28 Texas Administrative Code section 133.308. *Id.* § 133.305(a)(3). Prospective disputes include a provider or injured employee's dispute of an insurance carrier's denial of preauthorization under 28 Texas Administrative Code section 134.600 made before provision of the disputed medical services. *Id.* § 133.305(a)(3)(A).

A request for prospective necessity dispute resolution must be filed no later than the 45th day after the date the insurance carrier denied the party's request for reconsideration of the denial of preauthorization. *Id.* § 133.308(e)(2) (2004) (Tex. Workers' Comp. Comm'n, Medical Dispute Resolution by Independent Review Organizations). The party who fails to timely file a request for independent review of a medical necessity dispute with the TWCC waives the right to independent review or medical dispute resolution. *Id.* § 133.308(d), (e).

The independent review organization must review and render a decision on a prospective necessity dispute by the 20th day after the independent review organization (1) receives the dispute, or (2) receives

a designated doctor examination if one has been requested. *Id.* § 133.308(*o*). A party to a prospective necessity dispute may appeal the independent review organization decision by filing a written request for a hearing with the State Office of Administrative Hearings. *Id.* § 133.308(u). A party who has exhausted administrative remedies and who is aggrieved by a final decision of the State Office of Administrative Hearings may seek judicial review of the decision. *Id.* § 133.308(u)(7).

If the insurance carrier has raised a compensability dispute, the resolution of a request for review by an independent review organization will be abated until the compensability dispute is resolved. *Id.* § 133.308(f)(7).[4] The TWCC may dismiss a request for medical necessity dispute resolution if the dispute no longer exists. *Id.* § 133.308(i)(1). The TWCC cannot prohibit parties from voluntarily agreeing to pay for medical services that would otherwise require preauthorization, and any such agreements create liability for those agreed services on the part of the insurance carrier. Tex. Lab.Code Ann. § 413.014(f) (Vernon 2006).

### C. Did Stinson Exhaust Administrative Remedies?

#### 1. Compensability

It is undisputed that Stinson exhausted her administrative remedies with respect to compensability under chapter 410.

The carrier challenged compensability through the second tier of the resolution procedure, a contested case hearing. The TWCC hearing officer signed an order on June 22, 2005 requiring appellees to pay benefits based on a determination that the compensable injury from Stinson's December 16, 2003 fall encompassed her cervical and lumbar conditions. Appellees did not challenge this compensability determination further by using the procedures available under tier three or tier four.

#### 2. Medical necessity of physical therapy

Despite Stinson's exhaustion of administrative remedies with respect to compensability, appellees contend that dismissal for lack of jurisdiction nonetheless was mandated. Appellees argue that Stinson was required to exhaust not only the administrative remedies addressing compensability under chapter 410, but also the administrative remedies addressing medical necessity under chapter 413.

Specifically, appellees argue that Stinson failed to request preauthorization of the physical therapy recommended in Dr. Tomaszek's June 30, 2004 report as required under the Workers' Compensation Act and accompanying regulations. *See* Tex. Lab. Code Ann. § 413.014(c)(4), (d); 28 Tex. Admin. Code § 134.600(e). Appellees further argue that Stinson's asserted failure to request preauthorization forecloses her from establishing the medical necessity of physical therapy as of July 2004. Absent a determination that physical therapy was medically necessary when first sought in July 2004, appellees argue that Stinson cannot predicate her extra-contractual claims on a delay in receiving physical therapy between July 2004 and February 2005. *See Schwartz*, 274 S.W.3d at 274 (" 'The fact that the ... surgery w[as]

4. From January 2, 2002 until December 31, 2006, this regulation stated: "[I]f the carrier has raised a dispute pertaining to liability for the claim, compensability, or extent of injury ... the request for [review of a medical necessity claim] will be held in abeyance until those disputes have been resolved by a final decision of the [TWCC]." 28 Tex. Admin. Code § 133.308(f)(7). We decide this case under the regulations in place in 2004. *See* 28 Tex. Admin. Code § 133.308(a)(1) (2009) (Tex. Dep't of Ins., Div. of Workers' Comp., MDR by Independent Review Organizations).

ultimately authorized does not constitute any type of determination by the Commission that the initial denial ... [was] improper. Therefore, there does remain a dispute for the Commission to resolve.'") (quoting *In re Tex. Mut. Ins. Co.*, No. 05-05-00944-CV, 2005 WL 1763562, at *2 (Tex.App.-Dallas July 27, 2005, orig. proceeding) (mem.op.)).

Stinson responds that Drs. Helton and Tomaszek specifically requested that Gallagher Bassett approve Dr. Tomaszek's treatment plan, and that Gallagher Bassett was aware of the June 30, 2004 report. Stinson also relies on *In re Texas Workers' Compensation Insurance Fund*, 995 S.W.2d 335, 337 (Tex.App.-Houston [1st Dist.] 1999, orig. proceeding [mand. denied]), and *Ruttiger*, 265 S.W.3d at 656-58, to argue that the carrier's assent to physical therapy in February 2005 exhausts administrative remedies with respect to medical necessity regardless of whether preauthorization was requested in 2004.

> Under these opinions, when the Commission, claimant, and carrier agree on the claimant's entitlement to compensation benefits, their agreement is binding as a final determination that the benefits are owed, precluding the need for the claimant to seek administrative remedies before he can sue for damages arising from the carrier's unreasonable delay or denial of benefits.

*Schwartz*, 274 S.W.3d at 274 (citing *Ruttiger*, 265 S.W.3d at 657-58, and *In re Tex. Workers' Comp. Ins. Fund*, 995 S.W.2d at 337).

Stinson stresses that the governing regulations provided for abating a request for determination of medical necessity by an independent review organization until compensability has been resolved by a final decision of the TWCC. *See* 28 Tex. Admin. Code § 133.308(f)(7). By the time compensability was determined in June 2005, the insurance carrier voluntarily had been paying for Stinson's physical therapy for about four months. Stinson contends that she was not required to pursue an administrative determination in 2004 concerning the medical necessity of physical therapy for which the carrier already had agreed to pay by the time compensability was determined in her favor in June 2005.

Resolution of this appeal does not require choosing between the parties' competing positions regarding the need to pursue preauthorization in 2004. Even assuming that Stinson had to request preauthorization in 2004 as a prerequisite for a suit claiming that an unwarranted compensability challenge delayed her receipt of Dr. Tomaszek's recommended treatment until 2005, we conclude that the evidence submitted to the trial court suffices under the standard of review to demonstrate such a request.

Dr. Helton was questioned at length during his deposition about whether preauthorization for physical therapy had been requested.

Q. Do you—did you ever request or did you ever request preauthorization for any treatment for Ms. Stinson?

A. Did we request treatment for her? Yes. Yes. I basic—yes. We requested—in other words, we requested treatment for physical therapy.

\* \* \*

Q. ... The question I'm asking is: Specifically, was there a request for preauthorization made on behalf of Ms. Stinson for any treatment?

A. Uh-huh.

Q. Okay. What specifically was requested in terms of treatment for Ms. Stinson?

A. We requested physical therapy. And, in fact, Dr. Tomaszek, the neuro I referred them to—a lot of—a lot of requests that were made were actually recommended by the neuro [and] . . . Moran, the orthopedic doc. Most of the requests and recommendations were made by those guys. . . .

\* \* \*

Q. . . . This is what I've marked as Helton Exhibit 2. . . . This is the report of Dr. Tomaszek, dated June 30, 2004; is that correct, Dr. Helton?

A. I'm sorry. Dated 30th of '04, yes.

Q. Have you seen this report before?

A. Yes.

Q. Okay. Is this the—the report that lays out sort of what the plan that you and Dr. Tomaszek formed for Ms. Stinson's treatment?

A. At this particular time, that's what he was recommending, yes.

Q. Okay. Was there anything about the plan he laid out in this that you disagreed with?

A. No, sir.

Q. Did you provide any other written report to Gallagher Bas[s]ett or Ms. Stinson that would indicate what your plan for treatment was?

A. I faxed her this.

Q. Okay.

A. She got this.

\* \* \*

Q. Okay. If you'll go to the next page, which is the second one.

A. (Complies.)

Q. The first three paragraphs in this—on this page actually address sort of what you're going to do for her cervical spine injury. Is that a fair assessment?

A. That's what he was recommending, yes.

Q. Okay. Did you agree with this plan that Dr.—

A. Yes.

Q. Tomaszek put together?

A. Yes.

Q. Okay. The first thing is . . . cervical flexion and distraction regimen. Can you—is that a form of physical therapy?

A. Yes it is.

\* \* \*

Q. What—what does—what would a request—well, what did your request for this type of treatment—a request for preauthorization for this type of treatment, what did that look like?

A. I faxed this to them.

Q. Okay. Who is "them?"

A. Oh, Gallagher Bas[s]ett. Sorry.

Q. Okay. And did that—did you accompany that with a letter or a phone call and say, "look, this is—the treatment that's being outlined is in here"?

A. We—we faxed this to them. These were the findings from him. . . .

Dr. Helton did not identify the date on which he faxed Dr. Tomaszek's June 30, 2004 report to Gallagher Bassett. During Stinson's deposition, reference was made to the fax code on a copy of Dr. Tomaszek's June 30, 2004 report indicating that Gallagher Bassett received a copy of that report by fax on July 12, 2004. It is not clear from the record whether this fax came from Dr. Helton or Dr. Tomaszek.

The appellees dispute whether this evidence establishes a proper preauthorization request. However, the standard of review governing this appeal par-

allels the summary judgment standard. Insofar as evidence of jurisdictional facts is at issue, we must credit evidence favoring the non-movant and draw all reasonable inferences in the non-movant's favor. *See Deese,* 266 S.W.3d at 659 (citing *Miranda,* 133 S.W.3d at 228). Applying this standard of review, we conclude that the evidence set forth above suffices for purposes of appeal to establish that preauthorization was requested.[5]

The appellees assail this conclusion on rehearing, contending that (1) the court "determined" that the June 30, 2004 report constituted a preauthorization request; (2) the June 30, 2004 report lacks certain details specified under 28 Texas Administrative Code section 134.600(e)(2); and (3) "Dr. Helton's belief he requested preauthorization does not constitute valid evidence of jurisdiction." Appellees assert that "Dr. Helton ... did not provide Gallagher Bassett with any additional information relating to the allegedly requested treatment." Appellees further assert that "[p]laintiff failed to present any evidence to suggest Dr. Helton made any effort to expound on the June 30th report such that Gallagher Bassett could have even identified it as a preauthorization request."

The appellees' real quarrel is with the standard of review that controls our disposition. When they assert that "the Appellant failed to furnish any evidence which suggests anyone, including Dr. Helton, supplemented the June 30th report with the missing elements," the appellees ask the court to infer a lack of specific details from unlimited testimony that Dr. Helton and others requested preauthorization for physical therapy. We are required to draw reasonable inferences in favor of the non-movant, not against her. There is no one required means of transmitting a preauthorization request; written and oral communications both suffice. *See* 28 Tex. Admin. Code § 134.600(e)(1). Based on unlimited testimony that preauthorization was requested by multiple persons, it is reasonable to infer that such requests were specific enough in conjunction with the June 30, 2004 report to provide the needed details. *See, e.g., Hand v. Dean Witter Reynolds Inc.,* 889 S.W.2d 483, 493 n. 6 (Tex.App.-Houston [14th Dist.] 1994, writ denied) (rejecting appellees' contention that investor's request to broker to purchase oil option contracts was insufficiently specific because investor did not set a time for expiration of the options; "[f]or the purposes of this appeal, we accept appellant's position that [the investor] ... did attempt to place an order.").

The record contains no evidence of a written denial of preauthorization from the carrier. *See* 28 Tex. Admin. Code § 134.600(f)(1), (4), (6). The notice dated September 23, 2004 is a notification of refusal to pay rather than a written denial of preauthorization. *See* Tex. Lab.Code § 409.021(a)(2), .022(a). Even if this notice could be construed generously as a written denial of preauthorization, the notice does not comply with the timetables for a written denial of preauthorization. *See* 28 Tex. Admin. Code § 134.600(f)(3), (4). The claimant's deadlines for seeking reconsideration by the carrier and then filing a request for medical dispute resolution by an independent review organization are keyed to the claimant's receipt of a

---

5. To the extent that appellees challenge a failure to plead this jurisdictional fact in the original petition, the proper remedy is a remand and an opportunity to replead. *Kelly,* 2008 WL 5085138, at *2 ("If the pleadings do not contain sufficient facts to affirmatively demonstrate the trial court's jurisdiction but do not affirmatively demonstrate incurable defects in jurisdiction, the issue is one of pleading sufficiency and the plaintiffs should be afforded the opportunity to amend.").

timely written denial of preauthorization. *See* 28 Tex. Admin. Code §§ 133.308(d), (e)(2); 134.600(g)(1), (2)(A), (3). Absent receipt of a timely written denial of preauthorization, Stinson's deadlines did not begin to run and the provision regarding waiver of the right to independent review or medical dispute resolution is inapplicable. *See* 28 Tex. Admin. Code § 133.308(e).

These circumstances distinguish Stinson's situation from cases in which the claimant (1) reached an agreement with the carrier regarding compensability or other disputes, but (2) nonetheless failed to exhaust administrative remedies with respect to medical necessity by failing to submit denied preauthorization requests for administrative review. *Cf. Kelly,* 2008 WL 5085138, at *9 ("Consequently, even if appellees had expressly agreed to provide Kelly with medical benefits, they would still retain the right to require preauthorization of the spinal fusion under the Act. Because Kelly, like the *Pickett* claimant, did not submit any denied preauthorization requests to the TWCC, he has failed to exhaust his administrative remedies under the Act."); *see also Schwartz,* 274 S.W.3d at 274–76; *Pickett,* 239 S.W.3d at 836–37. Here, the record contains no written denial of preauthorization upon which further steps in the administrative review process were predicated. The circumstances here also are distinguishable from those in which a claimant begins the administrative medical dispute resolution process but does not pursue that process to completion. *Cf. Malish v. Pac. Employers Ins. Co.,* 106 S.W.3d 744, 746 (Tex.App.-Fort Worth 2003, no pet.).

This case is more closely analogous to *Ruttiger,* 265 S.W.3d at 655–56, in which the carrier originally denied medical and income benefits. The parties later entered into a benefit dispute agreement stipulating that "Ruttiger sustained a compensable injury in the form of a hernia and that Ruttiger suffered a disability for a specific period of time." *Id.* Ruttiger asserted extra-contractual claims stemming from the insurance carrier's delay in paying medical and income benefits. *Id.* at 656. The First Court of Appeals held that the trial court had jurisdiction because the benefit dispute agreement constituted a final determination that benefits were due, and "there is no suggestion in the record that, following the parties' entry into the Benefit Dispute Agreement, any dispute remained regarding what specific benefits Ruttiger was entitled to recover." *Id.* at 658 n. 8.

Here, too, there is no indication that any dispute remained for administrative resolution with respect to the medical necessity of physical therapy after February 2005, when the carrier assented to this treatment and began paying for it.

Medical necessity of physical therapy as of July 2004, when it was first requested, no longer was at issue because the carrier did not send a written denial in response to Stinson's preauthorization requests. There were no further administrative review procedures for Stinson to exhaust as to that issue because her obligations were keyed to the receipt of a written preauthorization denial that was not sent.[6] Medical necessity of physical therapy from February 2005 forward no longer was at issue in light of the carrier's assent. *See* Tex. Lab.Code § 413.014(f) ("The division

---

6. We do not address exhaustion of administrative remedies under circumstances in which the carrier has denied preauthorization in conformity with chapter 413 and the ac-

companying regulations, and thereby placed the onus on the claimant to undertake further steps in the administrative review process.

may not prohibit an insurance carrier and a health care provider from voluntarily discussing health care treatment and treatment plans ... and may not prohibit an insurance carrier from certifying or agreeing to pay for health care consistent with those agreements. The insurance carrier is liable for health care treatment and treatment plans ... that are voluntarily preauthorized and may not dispute the certified or agreed-on preauthorized health care treatment and treatment plans ... at a later date."); *see also In re Tex. Workers' Comp. Ins. Fund*, 995 S.W.2d at 337 ("We find no requirement under the Act which would require a claimant to continue through ... the disposition process if the parties agree on the claimant's compensation benefits at an earlier stage in the process.").

We sustain Stinson's issue regarding dismissal of her case for want of jurisdiction based upon the exhaustion of remedies doctrine.

## Conclusion

Because Stinson exhausted her available administrative remedies regarding appellees' disputes as to compensability and medical necessity, the trial court had subject matter jurisdiction over the case. *See Subaru*, 84 S.W.3d at 221–22; *Mayhew*, 964 S.W.2d at 928. Thus, the trial court erred by dismissing her suit for want of subject matter jurisdiction. The trial court's order of dismissal for want of jurisdiction is reversed, and the cause is remanded for further proceedings consistent with this opinion.