

# IN THE
# TENTH COURT OF APPEALS

### No. 10-09-00046-CV

**CHARLES OSBORN, M.D., D.C.,**
**D/B/A QUEST HEALTH & REHABILITATION,**

**Appellants**

**v.**

**ACE AMERICAN INSURANCE COMPANY,**

**Appellee**

**From the County Court at Law No. 1**
**Ellis County, Texas**
**Trial Court No. 08-C-3184**

## MEMORANDUM OPINION

After treating Wanda Johnson, a worker's compensation claimant, Dr. Charles Osborn sued Ace American Insurance Company, the carrier for Johnson's employer, for approximately $22,000 when Ace disputed and refused to pay Dr. Osborn's bills. Ace filed a plea to the jurisdiction, asserting that the trial court lacked jurisdiction because Dr. Osborn had failed to exhaust his administrative remedies. Both parties filed evidence and briefing on the jurisdictional question.

After a hearing on the plea, the parties filed further briefing and evidence, and

the trial court held another hearing. The trial court granted the plea to the jurisdiction in a detailed order. Dr. Osborn filed a motion for rehearing and more evidence, and the trial court held another hearing, after which it entered another detailed order that granted the plea and dismissed the case without prejudice. Dr. Osborn appeals.

Dr. Osborn's three issues are: (1) Did Ace conclusively establish that the trial court did not have jurisdiction over Dr. Osborn's claims? (2) Did the trial court fail to consider all of the possible bases for supporting its exercise of jurisdiction? (3) Is the trial court's dismissal ruling supported by the law and the evidence?

> Subject-matter jurisdiction is essential to the authority of a court to decide a case. … A plea to the jurisdiction is the vehicle by which a party contests the trial court's authority to determine the subject matter of a cause. Whether a trial court has subject-matter jurisdiction over a cause is a question of law and is reviewed de novo.

*Cornyn v. County of Hill*, 10 S.W.3d 424, 426-27 (Tex. App.—Waco 2000, no pet.) (citations omitted); *see also Stinson v. Ins. Co. of State of Pa.*, 286 S.W.3d 77, 83 (Tex. App.—Houston [14th Dist.] 2009, pet. denied).

> The plaintiff has the burden to allege facts affirmatively demonstrating that the trial court has subject matter jurisdiction. *Tex. Ass'n of Bus. v. Tex. Air Control Bd.*, 852 S.W.2d 440, 446 (Tex. 1993). Dismissing a cause of action for lack of subject-matter jurisdiction is proper only when it is impossible for the plaintiff's petition to confer jurisdiction on the trial court. *Freeman v. Wirecut E.D.M., Inc.*, 159 S.W.3d 721, 727 (Tex. App.—Dallas 2005, no pet.).

> When the legislature grants an administrative body the sole authority to make an initial determination in a dispute, the agency has exclusive jurisdiction over the dispute. *Thomas v. Long*, 207 S.W.3d 334, 340 (Tex. 2006). If an administrative body has exclusive jurisdiction, a party must exhaust all administrative remedies before seeking judicial review of the decision. *Id.* Until the party has satisfied this exhaustion requirement, the trial court lacks subject matter jurisdiction and must

dismiss those claims without prejudice to refiling. *Id.*

> Through the workers' compensation statutory scheme, the legislature has given a health care provider the right to a review when the provider has rendered a medical service but has been paid a reduced amount for that service. Tex. Lab. Code Ann. § 413.031(a)(1) (Vernon 2006). By granting the Division the sole authority to make an initial determination of a medical fee dispute, the Legislature has given the Division exclusive jurisdiction over such a dispute. *See Thomas,* 207 S.W.3d at 340; *see also Howell v. Tex. Workers' Compensation Comm'n,* 143 S.W.3d 416, 435 (Tex. App.—Austin 2004, pet. denied).

*HealthSouth Med. Ctr. v. Employers Ins. Co. of Wausau,* 232 S.W.3d 828, 830-31 (Tex.

App.—Dallas 2007, pet. denied); *see also Howell,* 143 S.W.3d at 435-38.

> When a plea to the jurisdiction challenges the existence of jurisdictional facts, we consider relevant evidence submitted by the parties. *Id.* (citing *Bland Indep. Sch. Dist. v. Blue,* 34 S.W.3d 547, 555 (Tex. 2000)); *see also Deese,* 266 S.W.3d at 657. The standard of review for a jurisdictional plea based on evidence "'generally mirrors that of a summary judgment under Texas Rule of Civil Procedure 166a(c).'" *Deese,* 266 S.W.3d at 657 (quoting *Miranda,* 133 S.W.3d at 228).

*Stinson,* 286 S.W.3d at 83.

The pleadings and evidence show that Ace was the workers' compensation carrier for Johnson's employer, National Envelope Corporation. The Division of Workers' Compensation ordered that Johnson was entitled to medical benefits for her compensable injury. "Coventry Workers' Comp Services," which Ace had contracted with, preauthorized Dr. Osborn's treatment of Johnson. Ace refused to pay for almost all of Dr. Osborn's treatment, contending that it was not causally related to the compensable injury. The record is not well-developed, but Johnson's compensable injury included cervical and lumbar sprains/strains and lumbar disc bulges and that the disputed treatment consisted of Dr. Osborn's treatment following Johnson's lumbar

laminectomy.[1]  Ace's position was that, while perhaps that treatment was medically necessary to treat Johnson's condition, it was not reasonable and medically necessary to treat her *compensable injury*.

After requesting reconsideration, Dr. Osborn sued Ace.  Ace's principal contention in the trial court was that Dr. Osborn failed to exhaust his administrative remedies because he was required, but failed, to pursue administrative medical dispute resolution of a fee dispute.  Ace initially presumed—and considered it undisputed—that Dr. Osborn had provided non-network care to Johnson.[2]  After Ace had filed its plea to the jurisdiction, Dr. Osborn amended his petition, but he did not plead that he had exhausted his administrative remedies, nor did he plead any facts relating to his provision of network health care or that he was a member of a certified workers' compensation health care network.

It was undisputed that Dr. Osborn did not seek medical dispute resolution (he admitted so in an interrogatory answer); thus, the threshold question before the trial court, and now before us, is whether Dr. Osborn was required to exhaust administrative remedies by seeking medical dispute resolution.  *See* TEX. ADMIN. CODE §§ 133.305, 133.307; *see also* TEX. LAB. CODE ANN. § 413.031 (Vernon Supp. 2010).  In the hearings

---

[1] Specifically, Ace's notice of disputed issue(s) and refusal to pay benefits states in part:  "We are disputing entitlement of extent of injury because:  treatment and surgical procedure of lumbar laminectomy at L4-5/L5-S1 is not causally related to this Workers' Compensation injury which is limited only to a cervical sprain/strain, left knee contusion, lumbar sprain/strain, and lumbar disc bulges at L1-2, L2-3, L4-5, L5-S1 as per CCH Decision & Order."

[2] Ace also argued that even if Dr. Osborn were to prevail in his position that he provided network care, he was still required to exhaust administrative remedies because his bills were subject to retrospective review.  *See generally* TEX. INS. CODE ANN. §§ 1305.351 - .355 (Vernon 2009 & Supp. 2010); TEX. ADMIN. CODE §§ 10.102 - .104.  Given our disposition, we need not address this argument.

and in the trial-court briefing, the trial court and the parties narrowed that question to whether Dr. Osborn provided *certified* workers' compensation network health care or non-network health care.[3]

Subsection 1305.004(a)(16) of Chapter 1305 of the Insurance Code, known as the Workers' Compensation Health Care Network Act, defines "network" or "workers' compensation health care network" as an organization that is:

> (A) formed as a health care provider network to provide health care services to injured employees;
> (B) *certified* in accordance with this chapter and commissioner rules; *and*
> (C) established by, or operates under contract with, an insurance carrier.

TEX. INS. CODE ANN. § 1305.004(a)(16) (Vernon Supp. 2010) (emphases added).

Under Rule 133.305, health care is either certified network health care or non-network health care, defined as:

> (5) Network health care--Health care delivered or arranged by a *certified* workers' compensation health care network, including authorized out-of-network care, as defined in Insurance Code Chapter 1305 and related rules.
>
> (6) Non-network health care--Health care not delivered or arranged by a *certified* workers' compensation health care network as defined in Insurance Code Chapter 1305 and related rules. "Non-network health care" includes health care delivered pursuant to Labor Code § 413.011(d-1) and § 413.0115.

TEX. ADMIN. CODE § 133.305(5), (6) (emphases added).

---

[3] We cannot dispute the trial court's following observation in its order on rehearing:

> It is the position of the Trial Court that the complexity and confusion of the Texas Workers' Compensation system is, *in great part*, the basis for the confusion and opposing positions of the parties, this due to the series of administrative and bureaucratic labyrinths through which the parties are forced to navigate (*specifically the Plaintiff, who though having provided valuable and effective healthcare services to the injured worker, has yet to be compensated for said services*).

Both sides presented evidence on the network versus non-network issue. Ace filed the affidavit of Renee Scott, which states:

> I work for Ace American Insurance Company. My title is that of Medical Programs Coordinator and I have held that position since February 2006. One of my duties as the Medical Programs Coordinator is to serve as a liaison between the carrier, third party administrator, and the health care network.

> Ace American Insurance Company has contracted with health care networks for injuries covered by the Texas Workers' Compensation Act. The only health care network that could pertain to the compensable injury of Wanda Johnson is Coventry Health Care Workers Compensation, Inc. d/b/a Coventry Workers' Comp Network. Coventry Workers' Comp Network is certified by the Division of Workers' Compensation to operate as a health care network. I have attached to this affidavit a document printed from the Texas Department of Insurance's website showing the name of the health care network, its certificate number 6087, and its date of certification on May 31, 2007.

> I am aware that the Plaintiff in this lawsuit is Charles Osborn, M.D., D.C. d/b/a Quest Health & Rehabilitation as reflected in the style of the case set out above. I have personally investigated whether Dr. Osborn or Quest Health & Rehabilitation has a contract with or is otherwise employed by Coventry Workers' Comp Network. Based on my investigation, I can state that neither Dr. Osborn nor Quest Health & Rehabilitation have a contract or are otherwise employed by Coventry Workers' Comp Network. In other words, they are not member doctors of the health care network utilized by Ace American Insurance Company. Even though it does not apply, I have also confirmed in my investigation that Dr. Osborn nor Quest Health & Rehabilitation do not have a contract with and are not employed by Intracorp/Lockheed Martin Aero Employee Select Network, which is the only other health care network in which Ace American Insurance Company has a contract.

> I have also investigated whether National Envelope, the employer of Wanda Johnson who is the injured employee, has elected to receive workers' compensation health care services for its injured employees. Based on my investigation, I can state that National Envelope has not made such an election, and, as a result, Wanda Johnson does not receive health care for her compensable injury of July 5, 2005 through the Coventry Workers' Comp Network. All health care received by Ms.

Johnson for her workers' compensation injury would be non-network health care.

It is my understanding that Dr. Osborn alleges that he has provided health care to Wanda Johnson through a health care network. It is my understanding that Dr. Osborn does have a contract for a broad based network, such as a preferred provider organization, but he does not have a contract with and is not an employee of the Coventry Workers' Comp Network. If Dr. Osborn does maintain that he is in that health care network, he would have a contract to that effect as required by the Texas Insurance Code.

Dr. Osborn filed a supplemental affidavit; one sentence conclusorily states that he provides "healthcare services within the network of Focus WC Bridge, a certified workers' compensation network." With his motion for rehearing (in which he tacitly admitted that he did not have a contract with Coventry), Dr. Osborn filed this additional evidence:

- A form letter to him from "Coventry/FOCUS," which states: "You are receiving this letter because Coventry Healthcare Services and FOCUS Healthcare management send patients to you by virtue of your contractual commitment with Beech Street to provide health care services to patients who have a job related illness or injury."

- A form letter to him from FOCUS Healthcare Management stating that "FOCUS Healthcare Management, Inc. accesses your services through a business relationship and contract with: Beech Street."

- An "Explanation of Review," apparently from Ace (or from ESIS, its apparent administrator) relating to the one charge that Ace did pay Dr. Osborn for. It references the network as "FOCUS WC BRIDGE" and the network plan as "FOCUS/BEECH STREET." For the $70.00 charge, it references a "network reduction" of $14.00 with the explanation of "network import re-pricing – contracted provider."

In the context of this case and the record evidence, Dr. Osborn's one-sentence statement that Focus WC Bridge is a "certified workers' compensation network" is

conclusory. *See Willis v. Nucor Corp.*, 282 S.W.3d 536, 548 (Tex. App.—Waco 2008, no pet.) ("'A conclusory statement is one that does not provide the underlying facts to support the conclusion. … A conclusory statement may set forth an unsupported legal conclusion or an unsupported factual conclusion.'"). Conclusory evidence is not competent and, as such, is no evidence and does not raise a fact issue. *See Schindler v. Baumann,* 272 S.W.3d 793, 796 (Tex. App.—Dallas 2008, no pet.); *see also Texas Division-Tranter, Inc. v. Carrozza,* 876 S.W.2d 312, 314 (Tex. 1994); *Davis v. Dillard's Dep't Store, Inc.,* No. 11-06-00027-CV, 2008 WL 1903794, at *2 (Tex. App.—Eastland May 1, 2008, no pet.).

Furthermore, Ace points out that Dr. Osborn (1) did not present evidence that Focus WC Bridge was a "certified workers' compensation *health care* network," as that term is used in the Workers' Compensation Act and the Insurance Code; (2) did not present evidence that the network reduction and network import re-pricing were for "network health care" pursuant to a certified workers' compensation health care network; and (3) did not present evidence that Beech Street was an approved "certified workers' compensation health care network."

Ace argues that its evidence incontrovertibly established that Dr. Osborn was not in a certified workers' compensation health care network because Scott's affidavit showed that (1) Dr. Osborn did not have a contract with Coventry Workers' Comp Network, the only certified workers' compensation health care network pertinent to his care for Johnson; (2) Dr. Osborn was not a member doctor of the health care network used by Ace; (3) Johnson's employer had not elected to participate in a certified

workers' compensation health care network with Ace (*see* TEX. INS. CODE ANN. § 1305.005(b) (Vernon 2009)); and (4) Dr. Osborn has a contract with a health-care network, but it is not with a certified workers' compensation health care network. Ace also notes that the Insurance Code requires a certified workers' compensation health care network to "enter into a written contract with each provider … that participates in the network." TEX. INS. CODE ANN. § 1305.152(a) (Vernon 2009). Dr. Osborn appears to have a contract with Beech Street, but there is no evidence of the nature of Beech Street's network.

Once Ace presented sufficient evidence conclusively establishing that Dr. Osborn did not provide health care for Johnson within a certified workers' compensation health care network, the burden of proof shifted to Dr. Osborn to present evidence sufficient to raise a fact issue. *See Centeq Realty, Inc. v. Siegler*, 899 S.W.2d 195, 197 (Tex. 1995). He presented evidence that he provided health care to Johnson within a network of some type, but he did not present evidence that he provided health care to Johnson within a statutorily defined and unique certified workers' compensation health care network. Based on our review of the evidence and applicable law, we hold that the trial court did not err in sustaining Ace's plea to the jurisdiction because Dr. Osborn has not exhausted his administrative remedies.[4] *See, e.g., Centre for Neuro Skills, Inc.-Texas v. Association Cas. Ins. Co.,* No. 05-06-00719-CV, 2007 WL 2380168, at *2 (Tex. App.—Dallas Aug. 22, 2007, pet. denied). We overrule issues one and three.

---

[4] Ace took the position in the trial court that, despite the passing of time and upon dismissal of the case, the applicable administrative rules allow Dr. Osborn an opportunity to pursue his administrative remedies because Ace disputed the extent of injury.

Dr. Osborn's second issue asserts that his suit was proper because his right to payment was subject to the Division's "Decision and Order" and he thus had a right to sue when Ace did not comply with that order by refusing to pay his bills. *See* TEX. LAB. CODE ANN. § 410.208(b) (Vernon 2006). The Order provides that Johnson "sustained a compensable cervical sprain/strain, lumbar sprain/strain, lumbar disc bulges at L1/2, L2/3, L4/5, and L5/S1, and left knee contusion injury in the course and scope of employment… ." It further states that Johnson "remains entitled to medical benefits for the compensable injury in accordance with TEXAS LABOR CODE §408.021."

Subsection 408.021(a) states in part: "An employee who sustains a compensable injury is entitled to all health care reasonably required by the nature of the injury as and when needed." TEX. LAB. CODE ANN. § 408.021(a) (Vernon 2006). We agree with Ace's assertion that this statute does not state that any treatment designated as related to the compensable injury must be automatically reimbursed by the carrier. Instead, the health care that the employee is entitled to must be "reasonably required" by the nature of the compensable injury, and that is apparently what the entire dispute between the parties is over: Ace has refused to pay for almost all of Dr. Osborn's treatment, contending that it was not causally related to Johnson's compensable injury. And as we have just held, that dispute must first be exhausted administratively. Accordingly, we overrule issue two.

Having overruled Dr. Osborn's three issues, we affirm the trial court's dismissal without prejudice of this cause. *See Thomas v. Long,* 207 S.W.3d 334, 340 (Tex. 2006) ("If an administrative body has exclusive jurisdiction, a party must exhaust all

administrative remedies before seeking judicial review of the decision.  Until the party

has satisfied this exhaustion requirement, the trial court lacks subject matter jurisdiction

and must dismiss those claims without prejudice to refiling.").


REX D. DAVIS
Justice

Before Chief Justice Gray,
      Justice Davis, and
      Justice Scoggins
Affirmed
Opinion delivered and filed September 14, 2011
[CV06]