**In re LIBERTY MUTUAL FIRE INSURANCE COMPANY, Relator.**

No. 08–0742.

Supreme Court of Texas.

Aug. 28, 2009.

David L. Plaut, Catherine L. Hanna, Jeffrey C. Glass, Hanna & Plaut, LLP, Austin, for Relator.

Daniel F. Horne, Stone & Home, L.L.P., Corpus Christi, for Real Party in Interest.

PER CURIAM.

Raymond Nickelson seeks bad-faith damages against his workers' compensation carrier, Liberty Mutual Fire Insurance Company, for denying preauthorization of medical treatment. But he only alleges the carrier turned down office visits (for which preauthorization was not required) and possible back surgery (for which preauthorization was not sought). By demanding preauthorization when it was not required and failing to request it when it was, Nickelson avoided all the administrative remedies that governed his claims. As his bad-faith suit could not be brought before first exhausting these administrative remedies, the courts below erred in denying Liberty's plea to the jurisdiction.

Nickelson alleged total and permanent disability from neck and back injuries he received when he jumped off a four-foot platform on June 4, 2003. After failing to timely dispute compensability, Liberty paid temporary income benefits for seven months and medical care that included thrice-weekly chiropractic treatments. Liberty stopped paying temporary income benefits in January 2004 when a designated doctor found Nickelson had reached maximum medical improvement with an impairment rating of zero percent. *See* TEX. LAB.CODE §§ 408.0041, .102.

Nickelson sought additional temporary income benefits through two benefit review conferences, a contested case hearing, an appeal to an appeals panel, and finally an appeal in Nueces County district court. At about the same time he filed suit, he phoned an adjustor who allegedly said Liberty was "not required to pay any more medical visits while my impairment rating was being contested." He also asserted that he "continued to try to make appointments with my doctor hoping that [Liberty] would not cut me off and worrying that I wouldn't be seen by the doctors and that I wouldn't get the neck surgery or back surgery I needed when the time came."

A year later, the parties settled all claims except a claim for bad-faith denial of access to medical care. Because medical care had not been raised in the previous administrative proceedings (which had addressed only income benefits), Liberty filed a plea to the jurisdiction seeking dismissal for failure to exhaust them. The trial court and court of appeals denied the plea. *See* 295 S.W.3d 344.

■ The Workers' Compensation Act vests the Workers' Compensation Division with exclusive jurisdiction to determine a claimant's entitlement to medical benefits. *See* TEX. LAB.CODE § 413.031; *Am. Motorists Ins. Co. v. Fodge*, 63 S.W.3d 801, 803–04 (Tex.2001). As Nickelson's bad-faith claim depends upon whether he was entitled to further medical care, that issue must first be addressed administratively. *Fodge*, 63 S.W.3d at 804. As it was not, the trial court should have granted Liberty's plea to the jurisdiction and dismissed the suit. *See id.* at 805. Its failure to do

so is correctable by mandamus to prevent a disruption of the orderly processes of government. *In re Sw. Bell Tel. Co.*, 235 S.W.3d 619, 624 (Tex.2007); *In re Entergy Corp.*, 142 S.W.3d 316, 321 (Tex.2004).

■ Nickelson opposes dismissal on three grounds. First, he points to a provision in the parties' settlement that he "remains entitled to medical benefits for the compensable injury in accordance with Section 408.021." The referenced section requires carriers to pay for treatment "reasonably required" for compensable injuries, a duty that cannot be cut off by settlement. TEX. LAB.CODE § 408.021(a), (d). But while Nickelson (as all other workers) remained entitled to medical care, disputes about whether further care was reasonably required had to be pursued administratively; the settlement said nothing about dispensing with that.

Second, Nickelson argues exhaustion was not required of his claims because there were no administrative remedies to exhaust, relying on *Gregson v. Zurich American Insurance Co.*, 322 F.3d 883, 887 (5th Cir.2003). In *Gregson*, the carrier preauthorized back surgery but then refused payment for an antibiotic incident to the surgery. *Id.* at 885–86. We agree that once preauthorization for surgery is obtained, it does not have to be obtained again for medications incident thereto. But the treatment here was not incident to a preauthorized procedure because surgery preauthorization was never requested.[1]

Third, Nickelson argues alternatively that he exhausted administrative remedies

---

**1.** The parties disagree whether Nickelson could voluntarily apply for pre authorization for office visits under former Commission Rule 134.650, allowing written requests for "specific care, which does not otherwise require pre authorization, being proposed for the treatment of the current medical condi-

tion." 29 Tex. Reg. 8597 (2004), *repealed by* 33 Tex. Reg. 189–90 (2008) (former 28 TEX. ADMIN. CODE § 134.650). We need not decide whether this rule provided administrative review before as well as after Nickelson's proposed office visit, as he never requested either.

by requesting approval for treatment which Liberty's adjustor denied in a phone conversation. We disagree that this complied with the administrative requirements. Nickelson says he was "worried" about whether he would get back surgery but never says he requested preauthorization for it, which was required before Liberty had a duty to pay for it. *See* TEX. LAB.CODE § 413.014(c)(1), (d). And preauthorization for office visits was not required; nothing prevented Nickelson from seeing a doctor and then seeking reimbursement administratively. *See* TEX. LAB. CODE § 413.031. In sum, Nickelson did not seek preauthorization when it was required, and did seek it when it was not. A party does not exhaust administrative procedures by ignoring the applicable rules.

Given the history of disputes between these litigants, we understand Nickelson's "worry" about whether his medical bills would be approved. But parties cannot avoid exhaustion of administrative remedies because they fear they might not prevail. If the treatment Nickelson was seeking was either unreasonable or unnecessary, then it was proper that both he and his doctor should be concerned about who was going to pay for it.

Accordingly, without hearing oral argument, TEX.R.APP. P. 52.8(c), we conditionally grant the petition for writ of mandamus and direct the trial court to enter an order granting the plea to the jurisdiction and dismissing the case. We are confident the trial court will comply, and our writ will issue only if it does not.