Petition
for Writ of Mandamus Conditionally Granted and Opinion filed July 16, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00229-CV



 

In Re Liberty Insurance Corporation and Michelle
Yaklin, Relators



 



ORIGINAL
PROCEEDING



WRIT OF MANDAMUS



OPINION

On March 15, 2010, Liberty Insurance Corporation and
its adjuster, Michelle Yaklin (collectively, “Liberty”), filed a petition for
writ of mandamus in this Court.  See Tex. Gov’t Code Ann. §22.221
(Vernon 2004); see also Tex. R. App. P. 52.  In the petition, Liberty
asks this Court to compel the Honorable Josefina Rendon, presiding judge of the
165th District Court of Harris County, to set aside her February 10, 2010 order
denying its plea to the jurisdiction for failure to exhaust administrative
remedies, grant the plea to the jurisdiction, and dismiss the case for lack of
jurisdiction.  We conditionally grant the petition.  

Background

            On
June 18, 2008, Sheila Kennedy suffered injuries when she slipped and fell on
vinyl flooring while in the copy room at the Plains Exploration and Production
Company where she worked.  On July 3, 2008, Liberty accepted as compensable a
left shoulder contusion, left arm contusion, neck contusion, lower back
contusion, and injuries to the eye socket (bruised), nose (swollen), front
teeth, and upper lip.  When Liberty accepted those injuries as compensable,
Kennedy began receiving chiropractic and other medical treatment.  

            An
MRI was performed on Kennedy’s left knee on August 25, 2008.  The MRI showed
the knee was normal except for an abnormal signal in the posterior horn of the
medial meniscus—possibly due to post-operative changes and/or complex tearing,
and chondromalacia.  

            On
September 30, 2008, Liberty denied a request for left knee arthroscopy from
Kennedy’s treating physician, Dr. Robert Fain, M.D.[1]
 The preauthorization request was denied for the following reasons: 

The request for left knee arthroscopy was not approved by
peer review as medically necessity could not be established per ODG [Official
Disability Guidelines].  

Please note that the peer review physician stated that
there was no documentation as to whether the MRI findings of the left knee
involving the abnormal signal of the medial meniscus was due to post op change
versus an acute meniscal tear since there was mention that the patient had
previous left knee surgery in 2007.

There did not appear to be any significant positive
objective findings on physical exam to justify the need for the surgical
intervention and does not meet ODG criteria.

Also, there was no indication as to whether the patient had
any previous formal PT or instructions in home exercises.

Thus,
the preauthorization request was denied based on medical necessity and
compensability, i.e., whether the condition was due to post-operative changes
after surgery in 2007 or the June 18, 2008 incident.  Neither Dr. Fain nor
Kennedy sought reconsideration of the denial of preauthorization for
arthroscopic knee surgery.[2]
 

            The
DWC received on October 23, 2008 a request for a designated doctor exam.[3]
 The request form does not indicate who requested an examination by a
designated doctor.  The note to the designated doctor directed the doctor to
address only maximum medical improvement, impairment rating, and extent of
injury, and ability to return to work.  With respect to extent of injury, the
note specifically stated that the “claimant slipped & fell on floor landing
on left knee & face.  Carrier has accepted only a sprain/strain.  Carrier
is disputing aggravation of pre-existing conditions, extent to left knee, right
hip, and back.”  The DWC sent notice to Kennedy on November 5, 2008 that it had
receive a request that a designated doctor be assigned to determine maximum
medical improvement, impairment rating, the ability of the employee to return
to work, and the extent of the employee’s compensable injury.  The notice
directed Kennedy to attend the examination with the designated doctor, Dr.
Jerry Franz, M.D.  

            On
November 21, 2008, Dr. Jerry Franz, M.D. examined Kennedy and issued his
designated doctor report on December 23, 2008.  Dr. Franz reported that the
extent of compensable injury included:  

1.      Post-concussion,
traumatic brain injury.

2.      Cervical
strain sprain aggravating underlying degenerative disk space narrowing and causing
borderline stenosis at C4-C5 and C5-C6.

3.      T11-T12
mm disk protrusion.

4.      Lumbar
strain/sprain aggravating underlying disk pathology from L2 through L5.

5.      There
is no Lumbar Radiculopathy

6.      There
is internal derangement of the Left Knee.

7.      She
has a severe strain/sprain of the Left Ankle.

8.      Unrelated
mild bilateral carpel tunnel syndrome per electrodiagnostics.

            On
January 19, 2009, Kennedy received a second opinion from Dr. Gregory P. Harvey,
M.D., who declined to recommend arthroscopic knee surgery.[4]
  In his report, Dr. Harvey stated: 

At this point, I think an initial trial of a cortisone
injection should be given to see how much pain relief the patient develops. 
The patient states that she did very well after her prior arthroscopic surgery
and that she did not have recurrence of pain until this injury in June.  I am
having difficulty determining whether the patient’s pain is coming from an
aggravation of her arthritis or whether she is having significant meniscal
symptoms.

The patient may ultimately require arthroscopic surgery
both as a diagnostic and therapeutic treatment if she continues to have
mechanical symptoms.  I have counseled her that since her meniscal symptoms are
not clearcut [sic] and she also has severe chondromalacia, that she may not
have total relief just from an arthroscopic procedure.  

            The
DWC conducted a benefit review conference on January 28, 2009.[5]
 Although a benefit review conference may be requested by the claimant, the
carrier, or the employer, the mandamus record does not contain the request for
the benefit review conference or otherwise indicate who requested the
conference or identify the disputed issues sought to be resolved by the benefit
review conference.  The parties were not able to reach an agreement, and the
following two issues remained unresolved after the benefit review conference: 
(1) whether the compensable injury extended to include degenerative disc
disease at C4-C5; spondylosis and stenosis at C5-C6 (aggravation);
post-concussion, traumatic brain injury; T11-T12 disc protrusion; lumbar disc
bulges at L2-L3, L3-L4 and L4-L5(aggravation); Grade I spondylolisthesis at
L3-L4 (aggravation); chondromalacia of the left patella; and medial meniscus
tear of the left knee; and (2) whether Liberty waived the right to dispute degenerative
disc disease at C4-C5; spondylosis and stenosis at C5-C6; traumatic brain
injury; disc generation at L3-L4; chondromalacia of the left patella; and
medical meniscus tear of the left knee.  The DWC scheduled a contested case hearing
for April 2, 2009.[6] 


            On
February 4, 2009, Liberty changed its earlier position regarding the
compensability of Kennedy’s knee injury, now accepting the injury as
compensable.  Liberty limited its dispute as follows:  

The injured employee’s compensable injury is limited to
cervical sprain/strain, lumbar sprain/strain, chondromalacia or left patella
and medial meniscus tear of the left knee.  No other condition naturally
resulted from or was affected by the original incident.  All other injuries, conditions,
diagnosis, and/or symptoms related to the injured body part or any other part
of the claimant’s body are denied as not resulting from the compensable injury
or accident.  More specifically, the following diagnoses are being disputed: 
degenerative disc disease at C4/5, spondylosis and stenosis at C5/6, post
concussion, traumatic brain injury, T11/12 disc protrusion, Lumbar disc bulges
at L2/3, L3/4 and L4/5, Grade I spondylolisthesis at L3/4.[7]  

            Dr.
Fain submitted a second request for preauthorization of arthroscopic surgery on
the left knee.[8] 
On February 19, 2009, Liberty approved Dr. Fain’s second request for
pre-authorization of the left knee arthroscopy “based on a determination that
the treatment/service is reasonable and necessary as outlined in the Texas
Workers’ Compensation Act, Rules and Fee Guidelines.”  More specifically, according
to Michelle Yaklin’s affidavit submitted in support of Liberty’s plea to the
jurisdiction, the second preauthorization request, unlike the first request,
documented compliance with relevant Official Disability Guidelines, including a
description of the failure of both physical therapies and medication and the
required conservative care.  On February 24, 2009, Kennedy underwent
arthroscopy, medical meniscectomy, and chondroplasty.  

            The
DWC held a contested case hearing on April 2, 2009 on the issues not resolved
at the benefit review conference.  The DWC issued a decision on April 6, 2009,
finding that Kennedy’s compensable injury of June 18, 2008 included
degenerative disc disease at C4-C5, spondylosis and stenosis at C5-C6, post
concussion, traumatic brain injury, T11-T12 disc protrusion, lumbar disc bulges
at L2-L3, L3-L4, and L4-L5, grade I spondylolisthesis at L3-L4, chondromalacia
of the left patella, and medical meniscus tear of the left knee.  The DWC
further concluded that Liberty had waived the right to dispute the diagnosis of
degenerative disc disease at C4-C5, spondylosis and stenosis at C5-C6,
traumatic brain injury, disc degeneration at L3-L4, chondromalacia of the left
patella, and medial meniscus tear of the left knee by not contesting timely the
diagnoses.[9]
 The DWC ordered with respect to the payment of benefits:

Carrier is ordered to pay benefits in accordance with this
decision, the Texas Workers’ Compensation Act, and the Commissioner’s Rules. 
Accrued but unpaid income benefits, if any, shall be paid in a lump sum
together with interest as provided by law. 

            On
August 14, 2009, Kennedy filed the underlying case against Liberty alleging bad
faith.  Kennedy bases her bad faith claims on Liberty’s (1) denial and/or delay
of payment of benefits after the DWC had ordered Liberty to pay benefits, and
(2) September 30, 2008 denial of the preauthorization request of surgery on
Kennedy’s left knee.  Kennedy alleges “consequential damages to her economic
welfare from the wrongful denial and delay of benefits; the mental anguish and
physical suffering resulting from this wrongful denial of benefits, and
continued impact on the medical evaluation, treatment, and final prognosis; . .
.”  Liberty filed its plea to the jurisdiction on September 29, 2009,
contending that Kennedy had not exhausted her administrative remedies with the
DWC.  The trial court held a hearing on Liberty’s plea to the jurisdiction on
February 8, 2010, and signed the order denying it on February 10, 2010.  In
this original proceeding, Liberty contends that the trial court abused its
discretion by denying its plea to the jurisdiction.  

Standard of Review

            To
be entitled to the extraordinary relief of a writ of mandamus, the relator must
show the trial court abused its discretion and there is no adequate remedy by
appeal.  In re Laibe Corp., 307 S.W.3d 314, 316 (Tex. 2010) (orig.
proceeding) (per curiam).  A trial court abuses its discretion if it reaches a
decision so arbitrary and unreasonable as to constitute a clear and prejudicial
error of law, or if it clearly fails to correctly analyze or apply the law.  In
re Columbia Med. Ctr. of Las Colinas, 306 S.W.3d 246, 248 (Tex. 2010)
(orig. proceeding) (per curiam); In re Cerberus Capital Mgmt., L.P., 164
S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per curiam).  In determining
whether appeal is an adequate remedy, we consider whether the benefits outweigh
the detriments of mandamus review.  In re BP Prods. N. Am., Inc., 244
S.W.3d 840, 845 (Tex. 2008) (orig. proceeding).  The failure to grant a plea to
the jurisdiction for failure to exhaust administrative remedies with the DWC is
subject to mandamus review in order to prevent disruption of the orderly
processes of government.  In re Liberty Mut. Fire Ins. Co., 295 S.W.3d
327, 328 (Tex. 2009) (orig. proceeding) (per curiam).  

            The
trial court has jurisdiction to award damages only to the extent that relief is
not dependent upon the adjudication, directly or indirectly, of a matter within
the DWC’s exclusive jurisdiction.  Cunningham Lindsey Claims Mgmt., Inc. v.
Snyder, 291 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2009, pet.
filed).  Determining whether an agency has subject matter jurisdiction is
treated as a question of law and reviewed de novo.  In re S.W. Bell Tel.
Co., L.P., 235 S.W.3d 619, 625 (Tex. 2007) (orig. proceeding).  If an
agency has exclusive jurisdiction to resolve a dispute, a party must first
exhaust all administrative remedies before a trial court has subject matter
jurisdiction.  O’Neal v. Ector County Indep. Sch. Dist., 251 S.W.3d 50,
51 (Tex. 2008) (per curiam).  

            A
plea to the jurisdiction challenging administrative exhaustion of remedies
under the workers’ compensation scheme can rest on the pleadings, or on
evidence.  Stinson v. Ins. Co. of the State of Pa., 286 S.W.3d 77, 83
(Tex. App.—Houston [14th Dist.] 2009, pet. denied) (op. on reh’g).  When a plea
to the jurisdiction challenges the pleadings, we determine if the pleader has
alleged facts that affirmatively demonstrate the court's jurisdiction to hear
the cause.  Tex. Dep’t of Parks & Wildlife v. Miranda, 133 S.W.3d
217, 226 (Tex. 2004).  We construe the pleadings liberally in favor of the
plaintiff and look to the pleader’s intent.  Id.  If the pleadings do
not contain sufficient facts to affirmatively demonstrate the trial court’s
jurisdiction but do not affirmatively demonstrate incurable defects in
jurisdiction, the issue is one of pleading sufficiency and the plaintiffs
should be afforded the opportunity to amend.  Westbrook v. Penley, 231
S.W.3d 389, 395 (Tex. 2007).  If the pleadings affirmatively negate the
existence of jurisdiction, then a plea to the jurisdiction may be granted
without allowing the plaintiffs an opportunity to amend.  Cameron County v.
Brown, 80 S.W.3d 549, 555 (Tex. 2002). 

 

 

Analysis

            The
Workers’ Compensation Act vests the Workers’ Compensation Division with
exclusive jurisdiction to determine a claimant’s entitlement to medical
benefits.  In re Liberty Mut. Fire Ins. Co., 295 S.W.3d at 328.  When an
agency has exclusive jurisdiction, a party must exhaust all administrative
remedies before seeking judicial review of the agency’s action.  Subaru,
84 S.W.3d at 221.  The exhaustion requirement ensures that the administrative
agency has the opportunity to resolve disputed fact issues within its exclusive
jurisdiction before a court addresses those issues.  Stinson, 286 S.W.3d
at 83 (citing Essenburg v. Dallas County, 988 S.W.2d 188, 189 (Tex.
1998) (per curiam)).  Kennedy’s claims arise from Liberty’s September 30, 2008
denial of her request for preauthorization of arthroscopic knee surgery and its
February 4, 2009 denial of compensability.  

Exhaustion
of Administrative Remedies

            Relying
on the Texas Supreme Court’s decision in American Motorists Insurance
Company v. Fodge, Kennedy generally asserts that because the DWC determined
in its April 6, 2009 decision that she is entitled to benefits, she can proceed
with bad faith claims arising from denial of benefits or delay in paying those
benefits determined to be due without any further exhaustion of remedies.  63
S.W.3d 801 (Tex. 2001).  While the carrier in Fodge was ordered to pay
temporary income benefits after a contested case hearing, the claimant never
sought medical benefits or claimed that she was denied medical benefits.  Id.
at 802.  Fodge subsequently sued the carrier for bad faith denial of medical
benefits and income benefits.  Id. at 803.  Holding that Fodge was
required to exhaust her administrative remedies regarding the denial of medical
benefits, the supreme court explained that the trial court could not award
damages for denial of benefits without a determination by the Commission that
such benefits were due.  Id. at 804.  However, Fodge’s claims for income
benefits, which were stipulated, were ripe for adjudication and should not have
been dismissed.  Id. at 805.  

            Kennedy’s
reliance on Fodge is misplaced.  While the DWC determined the extent of
Kennedy’s compensable injury, it did not address Kennedy’s entitlement to
medical benefits or specific medical treatment.  Cf. Pickett v. Tex. Mut.
Ins. Co., 239 S.W.3d 826, 831 (Tex. App.—Austin 2007, not pet.) (holding,
because benefit dispute agreement determined compensability, but did not
address or determine what medical treatments were related to compensable
injury, claimant was not relieved of obligation to exhaust administrative
remedies regarding disputes over specific medical benefits); Kelly v. Am.
Interstate Ins. Co., 14-07-00083-CV, 2008 WL 5085138, at *9 (Tex.
App.—Houston [14th Dist.] Nov. 25, 2008, pet. filed) (mem. op.) (holding,
because benefit dispute agreement specified nature of injuries and determined
they were generally compensable, but did not address medical benefits or
specific treatments, claimant did not exhaust administrative remedies when he
failed to submit any denied preauthorization requests to agency).  The
requirement to exhaust administrative remedies applies to disputes as to both
compensability or extent of injury and medical necessity or preauthorization.  Snyder,
291 S.W.3d at 477.  Even when the claimant has exhausted his administrative
remedies applicable to compensability, dismissal for lack of jurisdiction may
be warranted if the claimant failed to exhaust his remedies with regard to
medical necessity.  Id. at 477–78.  

            Kennedy
has not specified what benefits she was entitled to that were denied; neither
has she pled that she claimed those benefits related to her injuries.  Only the
DWC has jurisdiction to determine Kennedy’s entitlement to benefits.  Without a
DWC determination that Kennedy was entitled to any benefits, the trial court
cannot award damages for the denial of payment of benefits.  See Fodge,
63 S.W.3d at 803.  Therefore, Kennedy was required to seek a DWC determination
that she was entitled to specific benefits.  Because Kennedy did not do this,
she did not exhaust her administrative remedies regarding the denial of payment
of benefits.  The result is the same regarding the DWC’s finding that Liberty
waived its right to contest compensability.  The DWC finding of waiver as to
compensability is not a determination relating to Kennedy’s entitlement to
medical benefits.  Cf. Kelly, 2008 WL 5085138, at *6 (benefit dispute
agreement stated that injury was compensable and carrier waived its right to
contest compensability of claim, but did not address specific medical
treatments or procedures). 

            Kennedy
also did not exhaust administrative remedies with respect to Liberty’s September
30, 2008 denial of the preauthorization request for arthroscopic knee surgery.  It
is not disputed that neither Kennedy nor Dr. Fain asked Liberty to reconsider
its September 30, 2008 denial of the preauthorization request.  Liberty argues
Kennedy’s failure to exhaust ended the dispute over the first request for
preauthorization because reconsideration is a mandatory prerequisite to
continuing the medical dispute resolution process.[10]
 Instead of seeking reconsideration, Dr. Fain submitted a second
preauthorization request for arthroscopic surgery on the left knee.  Liberty
approved the second preauthorization request, and the arthroscopic knee surgery
was performed on February 24, 2009.  

            Before
the trial court can adjudicate a bad faith claim for denial of preauthorization
of medical treatment, the DWC must first have determined that the claimant was
entitled to the treatment.  Schwartz v. Ins. Co. of State of Pa., 274
S.W.3d 270, 275 (Tex. App.—Houston [1st Dist.] 2008, pet. denied).  The fact
that the carrier approved a subsequent preauthorization request for the same
treatment does not relieve the claimant of her obligation to seek a DWC
determination of entitlement of treatment in the first denied request.  See
Snyder, 291 S.W.3d at 479 (holding that carrier’s approval of second
preauthorization request did “not alter the fact that under the governing
statutes and administrative rules, resolution of any question regarding need
for surgery” as to the first preauthorization request “rested solely with the [agency]”);
Schwartz, 274 S.W.3d at 274–75 (holding that unresolved dispute as to
medical necessity of requested surgery still existed when claimant filed suit
even though carrier ultimately authorized surgery more than nine months after
initial request); In re Tex. Mut. Ins. Co., No. 05-05-00944-CV, 2005 WL
1763562, at *2 (Tex. App.—Dallas July 27, 2005, orig. proceeding) (mem. op.)
(“The fact that the discogram and fusion surgery were ultimately authorized
does not constitute any type of determination by the Commission that the
initial denial of the procedures . . . [was] improper.”).  

            However,
relying on Section 413.014(f) of the Texas Labor Code, Kennedy contends that she
was not required to further exhaust her administrative remedies as to the
September 30, 2008 denial of preauthorization because Liberty’s subsequent
authorization of the same surgery precludes any challenge to medical necessity.
 See Tex. Lab. Code Ann. § 413.014(f) (Vernon 2006) (DWC may not
prohibit carrier from voluntarily discussing prospective health care treatment
with provider or certifying or agreeing to pay for health care consistent with
agreement; carrier is liable for treatment that is voluntarily preauthorized
and may not dispute certified or agreed-on preauthorized health care treatment
at later date).  Section 413.014(f) is not applicable in this case.  Under
section 413.014(f), the DWC “cannot prohibit parties from voluntarily agreeing
to pay for medical services that would otherwise require preauthorization, and
any such agreements create liability for those agreed services on the part of
the insurance carrier.”  Stinson, 286 S.W.3d at 86.  Here, there was no
voluntary agreement by Liberty to pay for the arthroscopic knee surgery request
of September 30, 2008.  Instead, Liberty approved the second request for preauthorization
submitted by Dr. Fain.  

            Kennedy further contends
that a carrier’s agreement to provide benefits precludes any exhaustion
argument.  See Tex. Mut. Ins. Co. v. Ruttiger, 265 S.W.3d 651, 658 (Tex.
App.—Houston [1st Dist.] 2008, pet. granted) (holding bad faith claims in
delaying payment of benefits that carrier had agreed to pay in benefit dispute
agreement were ripe and trial court had jurisdiction to hear case); In re
Tex. Workers’ Comp. Ins. Fund, 995 S.W.2d 335, 337 (Tex. App.—Houston [1st
Dist.] 1999, orig. proceeding [mand. denied]) (holding claimant had exhausted
administrative remedies on claim for damages because of carrier’s delay in payment
of damages it had agreed to pay in benefit dispute agreement).  Unlike Fund
and Ruttiger, there is no benefit dispute agreement or any other
agreement expressly entitling Kennedy to medical benefits.  See Kelly,
2008 WL 5085138, at *9 (explaining that relevant benefit dispute agreements in Fund
and Ruttiger expressly created entitlement to medical benefits or
treatment).[11] 
Liberty denied the first preauthorization request based on medical necessity
and compensability because there was a question as to the whether the condition
was due to post-operative changes after surgery in 2007.  Liberty subsequently
changed its position on compensability in its February 4, 2010 notice of
disputed issues.  However, Liberty’s change in position as to the
compensability of the knee injury was not an “agreement” that Kennedy was
entitled to knee surgery.  Compensability and medical necessity are separate
inquiries and both require exhaustion of administrative remedies.  See Snyder,
291 S.W.3d at 477.  

            We
similarly reject Kennedy’s reliance on this court’s opinion in Stinson.  In
Stinson, the Texas Workers’ Compensation Commission decided the issue of
compensability in favor of Stinson after holding a contested hearing.  Stinson,
286 S.W.3d at 82.  It was undisputed that Stinson had exhausted her
administrative remedies with respect to compensability after the Commission’s
determination of the issue, but the carrier argued that Stinson was required to
also exhaust her remedies addressing medical necessity.  Id. at 86.  The
carrier contended that Stinson failed to request preauthorization of physical
therapy.  Id. at 86.  However, the evidence viewed in the light most
favorable to the non-movant was sufficient to raise a fact issue as to whether
preauthorization was requested.  Id. at 89.  Because the record
contained no evidence of a written denial of preauthorization from the carrier
and, absent receipt of a timely written denial of preauthorization, Stinson’s
deadlines did not begin to run and the provision regarding waiver of the right
to independent review or medical dispute resolution was inapplicable.  Id.
at 89–90.  Therefore, there were no administrative review procedures for
Stinson to follow for physical therapy as of July 2004 because her obligations
were keyed to receipt of a written preauthorization denial.  Id. at 90. 
Furthermore, there was no indication that any dispute remained for
administrative resolution with respect to medical necessity when the carrier subsequently
assented to the treatment and began paying for it.  Id.  Stinson
is not applicable here because (1) the receipt of Liberty’s September 30, 2008
written denial of Kennedy’s preauthorization request triggered her duty to seek
reconsideration of that decision; and (2) Liberty did not “assent” to the
arthroscopic knee surgery, but approved a second preauthorization request.  

            Any
determination that Liberty’s September 30, 2008 denial of Kennedy’s
preauthorization request for arthroscopic knee surgery was improper must have
first been made by the DWC.  Because Kennedy never took the first step in
exhausting her administrative remedies by seeking reconsideration of Liberty’s
denial of her first preauthorization request, she never obtained a DWC
determination that such denial was improper or that she was entitled to that
procedure.  See Snyder, 291 S.W.3d at 484 (“[T]he question of whether
the first preauthorization was wrongfully denied—and hence, whether Snyder was
damaged by a wrongful delay—can only be answered by first determining whether
spinal surgery was medically necessary [when first requested.”).  Therefore,
the trial court does not have jurisdiction over Kennedy’s claims arising from
Liberty’s September 30, 2008 denial of preauthorization for arthroscopic knee
surgery.[12]
 

Impediment
to Jurisdiction

If a claim is not within the court’s jurisdiction,
and the impediment to jurisdiction cannot be removed, then it must be
dismissed.  Fodge, 63 S.W.3d at 805.  If the impediment to jurisdiction
can be removed, then the court may abate proceedings to allow a reasonable
opportunity for the jurisdictional problem to be cured.  Id.  Here, the
jurisdictional impediment cannot be removed because Kennedy never sought a DWC
determination that she was entitled to arthroscopic knee surgery or any other
benefits.  See Snyder, 291 S.W.3d at 484 (“As a result of waiver, Snyder
has not and cannot exhaust administrative remedies regarding this issue.”).  

Conclusion

We hold the trial court abused its discretion in
denying Liberty’s plea to the jurisdiction for failure to exhaust
administrative remedies before the DWC, and Liberty does not have an adequate
remedy by appeal.  See In re Liberty Mut. Fire Ins. Co., 295 S.W.3d at
328.  Accordingly, we conditionally grant Liberty’s petition for writ of
mandamus and direct the trial court to set aside its February 10, 2010 order
denying the plea to the jurisdiction and enter an order granting the plea to
the jurisdiction and dismissing the case for lack of jurisdiction.  The writ
will issue only if the trial court fails to act in accordance with this opinion.

 

 

                                                                                    

                                                                        /s/        Tracy
Christopher

                                                                                    Justice

 

 

 

Panel consists of Chief Justice Hedges
and Justices Anderson and Christopher.









[1] See
28 Tex. Admin. Code § 134.600(f), (p) (2006).  





[2] See
Tex. Admin. Code § 134.600(o)(1) (providing that either “requestor or employee”
may request reconsideration of a denial of preauthorization “within 15 working
days”).  





[3] See
Tex. Lab. Code Ann. § 408.041(a) (Vernon Supp. 2009) (providing that, at
request of insurance carrier or employee, or on commissioner’s own order,
commissioner may order medical examination to resolve questions about
impairment caused by compensable injury; attainment of maximum medical
improvement; extent of employee’s compensable injury; whether injured
employee’s disability is direct result of work-related injury; ability of
employee to return to work; or similar issues).  





[4] Dr.
Harvey’s report states that Kennedy was “referred from Dr. Robert Fain and
Liberty Mutual for evaluation of her left knee.”  However, Michelle Yaklin
states in her affidavit submitted in support of Liberty’s plea to jurisdiction
that Dr. Fain referred Kennedy to Dr. Harvey with no mention that Liberty also
referred her. 





[5] A
benefit review conference is a nonadversarial, informal dispute resolution
proceeding designed to (1) explain the rights of the respective parties to a
workers’ compensation claim and the procedures necessary to protect those
rights; (2) discuss the facts of the claim, review available information in
order to evaluate the claim, and delineate the disputed issues; and (3) mediate
and resolve disputed issues by agreement.  Tex. Lab. Code Ann. § 410.021
(Vernon 2006).  A benefit review conference may be requested by a claimant, a
carrier, or an employer who has contested compensability.  28 Tex. Admin. Code
§ 141.1(a) (1991).  The request for a benefit review conference must be made on
a specified form and must identify and describe the disputed issues.  Id.
§ 141.1(b).  On receipt of a request from a party or on its own motion, the DWC
may direct the parties to a disputed workers’ compensation claim to meet in a
benefit review conference to attempt to reach agreement on the disputed issues
involved in the claim.  Tex. Lab. Code Ann. § 410.023(a) (Vernon 2006).  The
DWC shall require the party requesting the benefit review conference to provide
documentation of efforts to resolve the disputed issues before the request was
submitted.  Id. § 410.023(b).  





[6] A
benefit review conference is a prerequisite to a contested case hearing.  Tex.
Lab. Code Ann. § 410.024 (Vernon 2006).  





[7]
“Chondromalacia or left patella and medial meniscus tear of the left knee” were
among those disputed conditions that were not resolved by the benefit review
conference.  In its February 4, 2009 notice of disputed issues, Liberty states
that these conditions are included in the compensable injury.  





[8] “A
request for preauthorization for the same health care shall only be resubmitted
when the requestor provides objective clinical documentation to support substantial
change in the employee’s medical condition.  The carrier shall review the
documentation and determine if a substantial change in the employee’s medical
condition has occurred.”  28 Tex. Admin. Code § 134.600(o)(4).  





[9] Although
Liberty stated in the February 4, 2009 notice of disputed issues it accepted as
compensable “chondromalacia of the left patella and medial meniscus tear of
left knee,” those conditions were among those that were at issue at the April
2, 2009 contested case hearing and were found by the DWC to be included in the
compensable injury.  





[10] “The
requestor or employee may within 15 working days of receipt of a written
initial denial request the carrier to reconsider the denial and shall document
the reconsideration request.”  Tex. Admin. Code § 134.600(o)(1).  If the
carrier denies reconsideration of its initial denial, the requestor “shall file
a request for independent review with the insurance carrier (carrier) that
actually issued the adverse determination or the carrier’s utilization review
agent (URA) that actually issued the adverse determination no later than the
45th calendar day after receipt of the denial of reconsideration.”  Tex. Admin.
Code § 133.308(i) (2008).  “The Department may dismiss a request for medical
necessity dispute resolution if . . . the Department determines that the
dispute involving a non-life-threatening condition has not been submitted to
the carrier for reconsideration; . . .”  Id. § 133.308(j)(3).  





[11] When
the Commission, claimant, and carrier agree on the claimant’s entitlement to
compensation benefits, their agreement is binding as a final determination that
the benefits are owed, precluding the need for the claimant to seek
administrative remedies before she can sue for damages arising from the
carrier’s unreasonable delay or denial of benefits.  Schwartz, 274
S.W.3d at 274 (citing Tex. Lab. Code Ann. §§ 410.029, 410.030 (Vernon 2006)).  





[12]
At her deposition, Kennedy
complained about the following three instance of alleged denial or delay of
payment of medical benefits: (1) denial of payment for a “chilling contraption”
ordered by Dr. Fain; (2) two-week delay for approval of an MRI; and (3) two and
one-half-week delay of approval to see a neurosurgeon.  However, Kennedy testified
that she did not know if DWC review was sought with regard to these complaints.
 Kennedy has not complained of these instances in her pleadings or otherwise
shown that she obtained any DWC determination with regard to these complaints.  See Fodge, 63 S.W.3d at 804.