Petition
for Writ of Mandamus Conditionally Granted and Opinion filed July 26, 2010.

 

In
The

Fourteenth
Court of Appeals



NO. 14-10-00104-CV



 

In Re Texas Mutual Insurance Company,
Relator



 



ORIGINAL
PROCEEDING



WRIT OF MANDAMUS



OPINION

Texas Mutual Insurance Company filed a petition for
writ of mandamus in this court on February 5, 2010.  See Tex. Gov’t Code
Ann. § 22.221 (Vernon 2004); see also Tex. R. App. P. 52.  Texas Mutual
asks this court to compel the Honorable Robert E. May, presiding judge of the 149th
District Court of Brazoria County, to set aside his January 11, 2010 order
denying its plea to the jurisdiction based on a failure to exhaust
administrative remedies before the Division of Workers’ Compensation (“DWC”).[1] 
We conditionally grant the writ.  

Background

            This
case involves the interplay of two disputes in connection with a claim for
workers’ compensation benefits.  One dispute focuses on the extent of the
injury attributable to a compensable claim; the other focuses on the necessity
of medical treatment requested for the injury.  See generally Zenith Ins.
Co. v. Ayala, No. 09-0292, 2010 WL 2332078 (Tex. June 11, 2010) (per
curiam) (explaining differences among disputes regarding compensability, extent
of injury, and medical necessity).

            Real
party in interest Adrian Harding was involved in an accident on November 30,
2006, while driving a tractor trailer as an employee of AG Schultz, Sr. &
Sons, Inc.  Harding suffered injuries to his neck, lower back, and right elbow. 
Texas Mutual accepted Harding’s claim of a compensable injury and began paying
temporary income benefits to Harding.  Texas Mutual also paid all submitted
medical bills.  

            The
dispute over the extent of Harding’s injury began in 2007.  Harding underwent
an MRI scan in January 2007, which revealed (1) degenerative disc disease at
multiple cervical levels; and (2) small osteophytes encroaching into the spinal
canal causing spinal stenosis at C5-6 and C6-7.  Donna Washington, the adjuster
assigned to Harding’s claim, filed a dispute on January 26, 2007, challenging
the extent of Harding’s injury.  Texas Mutual contended that Harding’s injury from
the November 30, 2006 accident was limited to a lumbar strain, cervical strain,
left shoulder strain, and right elbow strain, and did not include degenerative
conditions identified on the MRI.  Texas Mutual continued to pay all medical
and income benefits due to Harding during the pendency of the dispute.  

            On
February 9, 2007, Harding’s surgeon, Dr. James Bonnen, noted in his file: 
“Apparently the patient’s workers compensation carrier is denying this is a
compensable injury. . . . This issue will have to be resolved before we can
proceed with further treatment.”  Dr. Bonnen signed a letter on April 4, 2007,
stating his opinion that the November 2006 accident exacerbated Harding’s
pre-existing degenerative conditions.  

            On
May 23, 2007, Washington made notations in Texas Mutual’s electronic claims
notes system reversing the decision to challenge the extent of Harding’s injury.[2]  Harding
contends that Texas Mutual never informed him of Washington’s internal reversal
regarding the extent of his injury.  Texas Mutual continued to contest the extent
of Harding’s injury through administrative channels.  

            Dr.
J.M. Lyon, who was selected by the DWC, examined Harding on September 6, 2007, and
opined that Harding’s injury from the November 6, 2006 accident extended to degenerative
conditions in Harding’s spine.  Texas Mutual then filed a “DWC Form-22” requesting
a post-designated doctor examination of Harding by Dr. Martin Steiner.  He
examined Harding on October 9, 2007, and opined that the compensable injury
extended to the diagnosis of lumbar strain, cervical strain, left shoulder
strain, and right elbow contusion; Dr. Steiner also concluded that Harding’s
cervical spondylosis was an ordinary disease of life that “was not enhanced,
accelerated or worsened” by his work-related injury.  

            Harding
requested a contested case hearing to resolve the dispute over the extent of
his injury, which the DWC conducted on December 5, 2007.  See Tex. Lab.
Code Ann. §§ 410.151–.169 (Vernon 2006).  The DWC issued its ruling on February
26, 2008.  The DWC concluded that Dr. Lyon’s opinion was not contrary to the
preponderance of the evidence.  The DWC also concluded that Texas Mutual could
not rely on Dr. Steiner’s report because the DWC had not approved the Form-22
before Dr. Steiner’s October 9, 2007 examination of Harding.

            Accordingly,
the DWC concluded that Harding’s injury from the November 2006 accident
extended to and included cervical intervertebral disc displacement, cervical
radiculitis, cervical spine stenosis and left trapezius myofascial pain
syndrome.  The DWC’s February 2008 order directed Texas Mutual “to pay benefits
in accordance with this decision, the Texas Workers’ Compensation Act, and the
Commissioner’s Rules.  Accrued but unpaid income benefits, if any, shall be
paid in a lump sum together with interest as provided by law.”  The order made
no findings regarding the necessity of any proposed medical treatments. 

            The
DWC’s February 2008 ruling concluded the dispute regarding the extent of
Harding’s injury from the November 2006 accident.  The dispute regarding
necessity of requested medical treatment for that injury began two months later
when Dr. Bonnen requested preauthorization on April 22, 2008, to perform an
anterior cervical discectomy and fusion at levels C5-6 and C6-7.  

            It
is undisputed that preauthorization is required for spinal surgery.  Harding’s
employer administered its workers’ compensation health care benefits through a
certified workers’ compensation health care network.  See Tex. Ins. Code
Ann. §§ 1305.001–.552 (Vernon 2009 & Supp. 2009); Tex. Lab. Code Ann. §
408.031 (Vernon 2006).  In this context, preauthorization is accomplished
through a “utilization review” process.  See Tex. Ins. Code. Ann. §
4201.002(13) (Vernon 2009 & Supp. 2009).  The network’s “utilization review
agent” for Harding’s claim was Coventry Workers’ Comp Services, which retained Dr.
William Abraham to review Dr. Bonnen’s request to preauthorize a two-level
fusion.  See id. § 4201.002(14).  Dr. Abraham denied the request on
April 25, 2008, because he concluded that the proposed two-level fusion was not
medically reasonable or necessary.  Harding did not seek reconsideration of this
denial.  See Tex. Ins. Code. Ann. § 1305.354 (establishing procedures
for reconsideration of adverse determination).  

            On
July 11, 2008, Dr. Bonnen again requested preauthorization for a two-level fusion. 
Dr. Gregory Goldsmith, who was retained by Coventry Workers’ Comp Services,
denied preauthorization on July 14, 2008, because he concluded that a two-level
fusion was not medically necessary.  Harding did not seek reconsideration of this
denial.  See id.

            Harding’s
attorney requested an independent review of the July 14, 2008 preauthorization denial
on July 18, 2008.  Coventry responded that it was “unable to process this
request” because “[t]here must first be an appeal or reconsideration before
requesting an Independent Review Organization (IRO).  A request for
reconsideration must be submitted within 30 days of the initial denial, unless
the condition is life threatening.”  See Tex. Ins. Code Ann. §
1305.354(a)(2) (request for reconsideration must be made not later than 30th
day after date of issuance of written notification of adverse determination).  

            Harding’s
new surgeon, Dr. Stephen Esses, requested preauthorization on September 17,
2008, for a more limited procedure — a fusion at level C5-6 only.  Coventry
retained Dr. Robert Waltrip to review this request; on September 22, 2008, he issued
a preauthorization for the one-level fusion.  Dr. Esses performed the one-level
fusion on October 3, 2008.  

            Harding
sued Washington and Texas Mutual on October 14, 2008, alleging that they failed
to investigate his claim properly and wrongfully denied and delayed payments
for necessary medical care and other benefits.  Harding bases his claims on an
asserted delay in his receipt of surgery while the compensability dispute was
pending from January 2007 until February 2008.  Harding contends that “because
he didn’t get any surgical treatment at all, now . . . [he] can’t go back to
driving, he’s going back to work but not doing that.”  Harding disclaims any
intent to predicate his claims on the separate medical necessity dispute that
lasted from April 2008 until September 2008.  Harding’s counsel told the trial
court that he is “suing for the delay impact, the denial. . . . We’re not suing
for nonpayment of any bill, period.”  Harding sought consequential damages for
harm to his economic welfare from wrongful denial and delay of benefits; he
also sought damages for mental anguish and physical suffering resulting from
wrongful denial of benefits, and from the “continued impact on the medical
evaluation, treatment, and final prognosis [of his injuries].”  

            On
December 1, 2009, Texas Mutual filed its amended plea to the jurisdiction contending
that (1) the DWC had exclusive jurisdiction over Harding’s claims; and (2) the
trial court lacked jurisdiction because Harding failed to exhaust his
administrative remedies before the DWC.  On January 11, 2010, the trial court signed
an order denying Texas Mutual’s amended plea to the jurisdiction.  Texas Mutual
now seeks review of that order via petition for writ of mandamus.  

Standard of Review

            A
writ of mandamus properly issues when the relator demonstrates that the trial
court abused its discretion and there is no adequate remedy by appeal.  In re
Gulf Exploration, LLC, 289 S.W.3d 836, 842 (Tex. 2009) (orig. proceeding). 
A trial court abuses its discretion if it reaches a decision so arbitrary and
unreasonable as to constitute a clear and prejudicial error of law, or if it
clearly fails to correctly analyze or apply the law.  In re Cerberus Capital
Mgmt., L.P., 164 S.W.3d 379, 382 (Tex. 2005) (orig. proceeding) (per
curiam); Walker v. Packer, 827 S.W.2d 833, 839 (Tex. 1992) (orig.
proceeding).  In determining whether appeal is an adequate remedy, we consider
whether the benefits outweigh the detriments of mandamus review.  In re BP
Prods. N. Am., Inc., 244 S.W.3d 840, 845 (Tex. 2008) (orig. proceeding).  To
prevent disruption of the orderly processes of government, mandamus review is
available to remedy a trial court’s erroneous denial of a plea to the
jurisdiction for failure to exhaust administrative remedies in a dispute
arising from a workers’ compensation carrier’s asserted bad faith handling of a
claim.  In re Liberty Mut. Fire Ins. Co., 295 S.W.3d 327, 328 (Tex.
2009) (orig. proceeding) (per curiam).  

            The
trial court has jurisdiction to award damages only to the extent that relief is
not dependent upon the direct or indirect adjudication of a matter within the
DWC’s exclusive jurisdiction.  Cunningham Lindsey Claims Mgmt., Inc. v.
Snyder, 291 S.W.3d 472, 477 (Tex. App.—Houston [14th Dist.] 2009, pet.
filed).  The determination of whether an agency has subject matter jurisdiction
is treated as a question of law and reviewed de novo.  Subaru of Am., Inc.
v. David McDavid Nissan, Inc., 84 S.W.3d 212, 222 (Tex. 2002).  If an
agency has exclusive jurisdiction to resolve a dispute, a party must first
exhaust all administrative remedies before a trial court has subject matter
jurisdiction.  O’Neal v. Ector County Indep. Sch. Dist., 251 S.W.3d 50,
51 (Tex. 2008) (per curiam).  

            A
plea to the jurisdiction challenging exhaustion of administrative remedies
under the workers’ compensation scheme can rest on the pleadings, or on
evidence.  Stinson v. Ins. Co. of the State of Pa., 286 S.W.3d 77, 83
(Tex. App.—Houston [14th Dist.] 2009, pet. denied) (op. on reh’g).  “‘When a
plea to the jurisdiction challenges the pleadings, we determine if the pleader
has alleged facts that affirmatively demonstrate the court’s jurisdiction to
hear the case.’”  Id. (quoting Combined Specialty Ins. Co. v. Deese,
266 S.W.3d 653, 657 (Tex. App.—Dallas 2008, no pet.)).  “The reviewing court
‘must look to the allegations in the pleadings, liberally construe them in the
plaintiff’s favor, and look to the pleader’s intent.’”  Id. (quoting Kelly
v. Am. Interstate Ins. Co., 14-07-00083-CV, 2008 WL 5085138, at *2 (Tex.
App.—Houston [14th Dist.] Nov. 25, 2008, pet. filed) (mem. op.)).  “‘If the
pleadings do not contain sufficient facts to affirmatively demonstrate the
trial court’s jurisdiction but do not affirmatively demonstrate incurable
defects in jurisdiction, the issue is one of pleading sufficiency and the
plaintiffs should be afforded the opportunity to amend.’”  Id. (quoting Kelly,
2008 WL 5085138, at *2).  

Analysis

I. 
Failure to Exhaust Administrative Remedies

            The
Workers’ Compensation Act vests the DWC with exclusive jurisdiction to
determine a claimant’s entitlement to medical benefits.  In re Liberty
Mutual Fire Ins. Co., 295 S.W.3d at 328.  When an agency has exclusive
jurisdiction, a party must exhaust all administrative remedies before seeking
judicial review of the agency’s action.  Subaru, 84 S.W.3d at 221.  The
exhaustion requirement ensures that the administrative agency has the
opportunity to resolve disputed fact issues within its exclusive jurisdiction
before a court must address those issues.  Stinson, 286 S.W.3d at 83
(citing Essenburg v. Dallas County, 988 S.W.2d 188, 189 (Tex. 1998) (per
curiam)).  The requirement to exhaust administrative remedies applies to
disputes regarding compensability and extent of injury, and to medical
necessity disputes.  Snyder, 291 S.W.3d at 477.  

            Texas
Mutual contends the trial court lacked jurisdiction because Harding did not (1)
seek reconsideration of the April 2008 and July 2008 denials of
preauthorization requests for a two-level fusion; or (2) challenge those
denials before the DWC.[3] 
Texas Mutual argues that absent a DWC determination with respect to the medical
necessity of a two-level fusion, Harding’s administrative remedies have not
been exhausted.  

            Harding
responds that he does not predicate his claims on the denials of his two
preauthorization requests for a two-level fusion.  Instead, he argues that his
claims are predicated solely on a delay in treatment attributable to an
unwarranted challenge to the extent of his injury that lasted from January 2007
until February 2008.  Harding argues there are no remedies left to exhaust with
respect to medical necessity because Texas Mutual subsequently approved his
request for a one-level fusion in September 2008.  

            The
Texas Supreme Court has considered “whether a compensation claimant can
prosecute a lawsuit against a carrier to recover benefits and damages resulting
from a denial of benefits without a prior determination by the Texas Workers’
Compensation Commission that benefits are due her.”  Am. Motorists Ins. Co.
v. Fodge, 63 S.W.3d 801, 802 (Tex. 1996).  The Fodge court held that
a claimant cannot recover damages for the carrier’s breach of its duty of good
faith in connection with payment of medical expenses if the claimant was not
entitled to medical treatment.  Id. at 804.  The Texas Supreme Court
explained:

The court could not adjudicate her damages claim without
determining her entitlement to medical treatment, a matter within the
Commission's exclusive jurisdiction.  Her claim for damages from denied medical
treatment is made no more viable simply by restating it under the other legal
theories she asserted — negligence, fraud, and statutory violations.  To award
damages equal to the cost of denied medical care is tantamount to ordering that
the care be paid for and would, as we said in Saenz, circumvent the
Commission's exclusive authority to decide that issue.  The same is true for
Fodge’s other claims for damages based on a denial of benefits.  

Id.
(citing Saenz v. Fid. & Guar. Ins. Underwriters, 925 S.W.2d 607, 612
(Tex. 1996)). 

            Harding
concedes that a claimant who has not obtained a DWC ruling entitling him to
benefits must exhaust administrative remedies under Fodge before
pursuing an action for benefits or bad faith damages.  However, Harding asserts
that there is no jurisdictional impediment to his lawsuit because (1) he
exhausted his administrative remedies before the DWC in February 2008 with
respect to the extent of his injury; and (2) there are no further
administrative remedies to be exhausted with respect to the medical necessity
of spinal surgery that was authorized in September 2008 and performed in
October 2008.  

            The
DWC’s February 2008 ruling on extent of injury did not automatically entitle
Harding to a two-level or a one-level fusion.  While the DWC determined in
February 2008 that Harding’s injury extended to degenerative conditions in his
spine, it did not decide whether a two-level fusion, a one-level fusion, or any
other specific treatment was necessary to treat Harding’s injury.  The DWC
could make no such determination in February 2008 because preauthorization for surgery
was not requested until April 2008.  We disagree with any suggestion that the
DWC’s February 2008 extent-of-injury determination also determined the medical
necessity of spinal surgery.  

            Disputes
regarding extent of injury and medical necessity involve separate procedures.  Under
DWC rules, “a ‘carrier shall approve or deny requests [for preauthorization]
based solely upon medical necessity of the health care required to treat the
injury, regardless of: (1) unresolved issue of compensability, extent of or
relatedness to the compensable injury; (2) the carrier’s liability for the
injury; or (3) the fact that the employee has reached maximum medical
improvement.’”  Zenith Ins. Co., 2010 WL 2332078, at *2 (quoting 28 Tex.
Admin. Code § 134.600(h)).  Upon receipt of the bill for preauthorized
treatment, the carrier may still argue that the condition treated is not
related to the compensable injury.  Id. (citing 28 Tex. Admin. Code §
134.600(d)).  The DWC explains:

“Preauthorization decisions are to be made entirely based
upon medical necessity of the treatment of the condition proposed to be
treated.  Issues associated with extent of injury, compensability of the
injury, or liability for the claim are separate from the issue of whether a
given treatment or service is medically necessary.  That is why approval of a
preauthorization request does not make a carrier liable for payment if the
carrier successfully challenges the extent of injury/compensability/liability
issue.”

Id.
at *3 (quoting 25 Tex. Reg. at 2101).  The carrier’s preauthorization does not
preclude it from disputing extent of injury because a determination of medical
necessity does not address extent of injury.  Id.  It follows that a
determination regarding extent of injury does not address the medical necessity
of a particular course of treatment for that injury.  See id.  

            The
exhaustion requirement applies to disputes regarding extent of injury and
medical necessity.  See Stinson, 286 S.W.3d 84–85; Snyder, 291
S.W.3d at 477.  Even when the claimant has exhausted his administrative
remedies applicable to extent of injury, dismissal for lack of jurisdiction may
be warranted if the claimant failed to exhaust his remedies with regard to medical
necessity.  Snyder, 291 S.W.3d at 477–78.  

            The
analysis here does not depend upon whether the claim at issue is predicated on
an alleged denial of benefits as in Fodge, 63 S.W.3d at 804, or on an
alleged delay in receipt of benefits.  Administrative remedies still must be
exhausted.  See Pickett v. Tex. Mut. Ins. Co., 239 S.W.3d 826, 836 (Tex.
App.—Austin 2007, no pet.) (claims based on alleged delays in payment or
preauthorization of medical benefits are not exempt from exhaustion of
administrative remedies); Malish v. Pac. Employers Ins. Co., 106 S.W.3d
744, 746–47 (Tex. App.—Fort Worth 2003, no pet.) (court lacked jurisdiction
over claims based on carrier’s delay in reimbursing expenses or preauthorizing
medical care other than care ordered by agency).  

            The
circumstances here parallel Snyder, which holds that administrative
remedies must be exhausted both as to (1) compensability and extent of injury;
and (2) medical necessity.  291 S.W.3d at 477–78.  “Although Snyder
characterizes his injuries as the result of a wrongful compensability dispute
for which he has exhausted his administrative remedies, his claims are
dependent on the determination that he was entitled to preauthorization of the
surgery in December 2002.”  Id. at 478.  The Snyder court reversed
a judgment on appeal for the plaintiff and rendered a take-nothing judgment
because the plaintiff did not exhaust administrative remedies by seeking
reconsideration of the carrier’s initial adverse medical necessity decision
regarding neck surgery in December 2002, even though he did exhaust
administrative remedies as to a separate compensability and extent-of-injury
dispute.  Id. at 479.  

            This
case is distinguishable from Stinson, in which the court reversed a
dismissal for lack of jurisdiction because a fact issue existed as to whether
the claimant had requested preauthorization for physical therapy while the
carrier was challenging extent of injury.  286 S.W.3d at 88–89.  The Stinson
court assumed but did not decide that a preauthorization request was required. 
Id.  Assuming that preauthorization was required, and concluding that
the evidence raised a fact question regarding the existence of a
preauthorization request in light of the governing standard of review, the Stinson
court held that dismissal was not warranted because the carrier had not
followed the necessary administrative steps in responding to the request for
preauthorization.  Id. at 89.  Unlike Stinson, there is no
evidence of and no fact issue here regarding any preauthorization request
during the period of alleged delay between January 2007 and February 2008.  

            Harding
argues that he was not required to exhaust administrative remedies regarding
medical necessity because Texas Mutual subsequently approved the one-level fusion. 
But Texas Mutual’s September 2008 approval of a one-level fusion does not address
the medical necessity of a one-level fusion, a two-level fusion, or any other
treatment for which preauthorization was required during the period of alleged
delay while extent of injury was being disputed between January 2007 and February
2008.  See Snyder, 291 S.W.3d at 479 (“The absence of a dispute
regarding the second preauthorization request does not alter the fact that . .
. resolution of any question regarding the need for surgery in December 2002 rested
exclusively with the TWCC.”).  Harding cannot seek damages for an asserted
delay in receipt of treatment between January 2007 and February 2008 without a
determination that he was entitled to such treatment at that time; that
determination is lacking because the DWC has not determined that the allegedly
delayed treatment was medically necessary between January 2007 and February
2008.  See Fodge, 63 S.W.3d at 804; Snyder, 291 S.W.3d at 479.  

            In
some circumstances involving parallel compensability and medical necessity
disputes, entitlement to benefits can be shown by agreement between the carrier
and the claimant.  See Tex. Mut. Ins. Co. v. Ruttiger, 265 S.W.3d 651,
658 (Tex. App.—Houston [1st Dist.] 2008, pet. granted).  Here, Harding cannot
show delay of receipt of a one-level or a two-level fusion to which he was
entitled between January 2007 and February 2008 because he did not request preauthorization
for a one-level or a two-level fusion during that period.  See Snyder,
291 S.W.3d at 484.  Texas Mutual did not agree to a fusion at any level between
January 2007 and February 2008.  Texas Mutual’s subsequent approval of a
one-level fusion in September 2008 did not establish that a one-level or a
two-level fusion was medically necessary between January 2007 and February
2008.  See Snyder, 291 S.W.3d at 479; see also Pickett, 239
S.W.3d at 831 (existence of benefit dispute agreement addressing causal
connection between psychological disorders and compensable back injury did not
obviate need to exhaust administrative remedies regarding necessity of specific
medical treatments for psychological disorders). 

            Requiring
exhaustion of administrative remedies allows the DWC to resolve disputed fact
issues within its exclusive jurisdiction.  See Essenberg, 988 S.W.2d at
189 (“[T]he Legislature in conferring jurisdiction upon an agency expresses its
will to have the agency resolve disputed issues of fact and policy. . . . [T]he
exhaustion requirement seeks to assure that the appropriate body adjudicates
the dispute—the hallmark of a jurisdictional statute.”).  Harding wants to ask
the fact finder at trial to determine that spinal surgery was medically
necessary between January 2007 and 2008.  This is an agency determination.  See
Fodge, 63 S.W.3d at 804; Snyder, 291 S.W.3d at 479.  

            Nothing
prevented Harding from seeking preauthorization for a one-level or a two-level
fusion between January 2007 and February 2008. Preauthorization, compensability,
and extent of injury are separate inquiries.  See Zenith Ins. Co., 2010
WL 2332078, at *2–3.  Nothing relieved Harding of the obligation to establish
the medical necessity of surgery between January 2007 and February 2008 as a
prerequisite to claiming that a delay between January 2007 and February 2008
foreclosed his receipt of necessary surgery.  See In re Liberty Mut. Fire
Ins. Co., 295 S.W.3d at 329 (“Nickelson did not seek preauthorization when
it was required. . . . A party does not exhaust administrative procedures by
ignoring the applicable rules.”).[4] 


            Harding’s
entitlement to a one-level or a two-level fusion between January 2007 and
February 2008 has not been determined by the DWC and has not been resolved by
agreement.  This issue remains unresolved.  Therefore, the fact finder
impermissibly would be asked to make an initial determination as to whether
surgery was required between January 2007 and February 2008; that determination
lies within the DWC’s exclusive jurisdiction.  See Fodge, 63 S.W.3d at
804; Snyder, 291 S.W.3d at 479.  Because Harding did not exhaust his
administrative remedies, the trial court abused its discretion when it denied
Texas Mutual’s plea to the jurisdiction.  See Liberty Mut. Fire Ins. Co.,
295 S.W.3d at 329.  

II.  Impediment to
Jurisdiction

We must determine whether Harding’s suit should be
dismissed in its entirety as Texas Mutual asserts.  If a claim is not within
the court’s jurisdiction, and the impediment to jurisdiction cannot be removed,
then it must be dismissed.  Id. 805.  If the impediment to jurisdiction
can be removed, then the court may abate proceedings to allow a reasonable
opportunity for the jurisdictional problem to be cured.  Id.  Here, the
jurisdictional impediment cannot be removed.  See Snyder, 291 S.W.3d at
484.  

Conclusion

Because Harding failed to exhaust his administrative
remedies before the DWC, the trial court abused its discretion by denying Texas
Mutual’s plea to the jurisdiction.  Accordingly, we conditionally grant Texas
Mutual’s petition for writ of mandamus and direct the trial court to set aside
its January 11, 2010 order, and enter an order granting the plea to the
jurisdiction and dismissing the case.  The writ will issue only if the trial
court fails to act in accordance with this opinion.  

 

                                                                                    

                                                                        /s/        William
J. Boyce

                                                                                    Justice

 

 

 

 

 

Panel consists of Justices Frost, Boyce,
and Sullivan.









[1] The
Texas Department of Insurance, Division of Workers’ Compensation is responsible
for administering and operating the workers’ compensation system in this
state.  Tex. Lab. Code Ann. § 402.001 (Vernon 2006). 





[2]
The following exchange took
place at the hearing on the amended plea to the jurisdiction with regard to the
reversal of the initial dispute of the extent of injury:

MR. DOYLE:  Said reverse the
denial on their official records; but, apparently, her managers thereafter
continued to deny.

THE COURT:  And then when
was that?

MR. DOYLE:  That was that
contested case hearing issue I’m talking about.  In other words, the denial
that she officially on her records reversed was the January ’07 denial.  They
went ahead and still pressed it—they being the managers—until it was fully
resolved by the commission against the carrier in February ’08.

THE COURT:  When did that
hit the light of day?

MS. MYERS:  The denial?

MR. DOYLE:  You mean the
reversal?

THE COURT:  Yeah.

MR. DOYLE:  In discovery in
this case.  

THE COURT:  But when?

MR. DOYLE:  When did they
give us—I think we had to do a Motion to Compel.

THE COURT:  So, it was not
disclosed?

MR. DOYLE:  No.  In other
words, she documented on their records; but never revealed it.  They went ahead
and proceeded all the way through these administrative steps until they lost.





[3]  The
employee or physician first must request reconsideration of the decision
denying preauthorization.  See Tex. Ins. Code Ann. § 1305.354 (providing
procedures for reconsideration of adverse determination); § 4201.351 (“[A] a
complaint filed concerning dissatisfaction or disagreement with an adverse
determination constitutes an appeal of that adverse determination.”).  The
reconsideration must be performed by a provider other than the provider who
made the original adverse determination.  Id. § 1305.354(a)(1).  If the
request for reconsideration is denied, then the employee or his physician may
seek review of that denial by an independent review organization.  Id. §
1305.355(a)(1).  The request for independent review must be filed not later
than the 45th day after the date of the denial of reconsideration.  Id.
§ 1305.355(b). 





[4] Under a
provision of the Texas Administration Code that was in effect until December
31, 2006, if the insurance carrier raised a compensability dispute, resolution
of the request for review by an independent review organization would be abated
until the resolution of the compensability dispute.  Stinson, 286 S.W.3d
at 86 (citing former 28 Tex. Admin. Code §133.308(f)(7)).  That provision is
not applicable in this case.  Similarly, Harding cannot rely upon Section
413.014(f) of the Labor Code to argue that no preauthorization request was
required.  Section 413.014(f) does not apply to Harding’s “in network” claim.  See
Tex. Ins. Code § 1305.351(c).